(Decided April 8th, 1897).

## ALCAEUS HOOPER, Mayor, LUCAS P. BUNNELL and Others vs. JOSEPH L. FARNEN and Others.

*Municipal Corporations—Power of Mayor of Baltimore City to Remove Municipal Officers—Removal of Board of School Commissioners—Mandamus—Parties.*

Local Code, Art. 4, sec. 31, provides that all persons holding office under the corporation of Baltimore City, shall, unless otherwise provided by law or ordinance, hold their offices during the pleasure of the Mayor; also, that no person holding office by appointment of the Mayor shall continue in the same if a defaulter to the city, or if not a citizen of the State and a registered voter, and the Mayor is directed to revoke any appointment for any one of the above enumerated causes, if the charges are sustained by proof upon investigation. The Mayor, without notice or charges, removed from office a Board of School Commissioners, alleging that the ordinance under which they were appointed was void. Under this ordinance the board was not appointed by the Mayor at all, but had been elected by a convention of the two branches of the City Council for a term of four years; and this ordinance was not void as alleged by the Mayor, but valid. *Held,* that the Mayor had no power under the statute to remove the School Commissioners, and his attempt to remove them created no vacancies.

An ordinance of Baltimore City (Art. 1, sec. 46 of the City Code) provides that "a term of holding shall not be deemed to be created by any resolution or ordinance so as to affect the power of removal given to the Mayor by Art. 4, sec. 31, Public Local Laws, because

such resolution or ordinance may prescribe that such officer or offi-
cers may or shall be appointed bi-annually or in the month of Feb-
ruary, or as other city officers are appointed, or by any like expres-
sion indicating a periodical duty of appointment, and such words
shall not be deemed and taken as otherwise providing by law or or-
dinance, so as to annul the power of removal intended to be given
by said section.'' *Held,* that this ordinance gave no power to the
Mayor to remove an officer when none existed under the above-
mentioned statute (Local Code, Art, 4, sec. 31); that it does not au-
thorize the Mayor to remove at pleasure any officer holding for a
definite term under an ordinance, but its meaning is that when the
phrase biennial appointment, &c., is used in an ordinance relating to
municipal officers, it shall not be treated as establishing a definite
term.

The Mayor of Baltimore assuming that the Board of School Commis-
sioners had been illegally appointed removed them from office and
appointed, during a recess of the Council, a new board which took
possession of the rooms, documents, etc., of the board, with the
assistance of the Mayor. The members of the old board collect-
ively petitioned for a writ of *mandamus* against the Mayor and the
members of the new board requiring them to restore possession of
the rooms, documents, etc. It was decided in another proceeding
that the old board had not been illegally appointed. The respon-
dents set up that they were not in possession of the rooms, etc., but
that their secretary was. *Held,*

1st. That the secretary was the mere agent of the respondents, and
his holding being their holding the writ was properly issued against
them.

2nd. That the petitioners were entitled to apply for the writ collect-
ively and in their official capacity.

Appeal from an order of the Baltimore City Court
(WICKES, J.), passed on March 15th, 1897, by which the
demurrer of the appellees to the answer of the appellants
(defendants below), was sustained; and it was ordered that
a peremptory writ of *mandamus* issue against the defend-
ants, commanding them, '' individually and collectively,
claiming to be the Board of Commissioners of Public Schools
of Baltimore City, to restore to the petitioners as the legal
Board of Public School Commissioners of Baltimore City,
the free and obstructed use of the official quarters and rooms
in the City Hall set apart for the use of the Board of
Commissioners of Public Schools of said city, and to va-

cate and quit said rooms and official quarters; to sur-
render and deliver to the petitioners, as such legal board,
all the books, records, documents, papers and archives, of
every description, belonging to the petitioners, as such right-
ful board, and which are now wrongfully withheld from them
by the respondents, their appointees, employees, agents and
servants, to cease to exercise all and every kind of au-
thority and power, as Commissioners of Public Schools of
the city of Baltimore, and to surrender the office and func-
tions of the Board of School Commissioners of Baltimore
City now wrongfully held by them, individually and collec-
tively, with all the rights, powers and authorities belonging
to said office and to said board, to the petitioners, as the
only legally appointed Board of Commissioners of Public
Schools of Baltimore City.''

The cause was argued before McSHERRY, C. J., BRYAN,
FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and RUSSUM, JJ.

*Thomas G. Hayes, City Counsellor,* and *Thomas Ireland
Elliott, City Solicitor,* for the appellant.

I. *The appellees, petitioners below, cannot collectively main-
tain this application.* The prayer of the petition, among
other things, asks that a *mandamus* issue requiring the
Mayor of Baltimore to administer the oath of office to each
of the petitioners individually, and so the order of the lower
Court directed the *mandamus* to issue.

The ordinances set forth in the petition show that the
offices of School Commissioners are filled by one person
from each of the twenty-one wards of Baltimore City. The
office of each Commissioner is distinct, separate and inde-
pendent. This being the fact, the right to have adminis-
tered the oath of office is a right belonging to each Com-
missioner in his separate and individual capacity with noth-
ing joint or collective in it.

The principle of law governing this question is thus stated
by MR. HIGH: '' When the interest of several relators seek-

ing redress by *mandamus* are separate and independent they cannot join in one and the same writ, but should have separate writs according to their several interests. Thus, when different members of the Common Council of a city, who have been removed from their offices seek by *mandamus* to be restored, they cannot all join in one writ, since their interests being several and independent, a joint restitution cannot be awarded them." *High Extra. Rem.*, sec. 439.

The fact that the prayer of the petition and order of Court includes the delivery to the petitioners of the books, papers and rooms of the School Board, and which may be a collective right, cannot give legality to the other portion of the relief prayed which is a right appertaining to the School Commissioners in their separate and individual capacity.

The cases decided by this Court where writs of *mandamus* were awarded to School Commissioners in their collective capacities, were those of the Commissioners of the counties which are *quasi* corporations. This is not true of the School Commissioners of Baltimore City, for they are municipal agents only and have nothing in their creation which make them *quasi* corporations. *O'Neal's case*, 27 Md. 228 ; *Wicomico case*, 35 Md. 201.

II. *The Commissioners of Schools for Baltimore City hold their offices at the will of the Mayor and are removed at his pleasure.* The charter provision relating to the removal of municipal officers is contained in the Local Code, Art. 4, section 31. The first clause of that section is the law relating to such removals, and is as follows: "All persons holding office under the corporation of the city of Baltimore, shall, unless otherwise provided by law or ordinance, hold their respective offices during the *pleasure* of the Mayor." The inquiry under this section is, does there exist either a " law or ordinance " defining a definite term for the School Commissioners ? If there is then a removal it must be for cause and after notice. *Miles* v. *Stevenson*, 80 Md. 366 ; *Townsend* v. *Kurtz*, 83 Md. 350.

There is no law on the subject, but there is an ordinance

relating to the term of School Commissioners. Article 44, section 3, Baltimore City Code, provides: "In the month of February in each succeeding year the First and Second Branches of the City Council in convention assembled, shall elect School Commissioners, in place of those only whose term of office shall at that time expire, and the Commissioners elected as prescribed by this section shall continue in office for four years."

If there were no other ordinance relating to the matter of the terms of municipal officers, it might be conceded that the terms of School Commissioners by the above section being for a fixed term, Article 4, section 31 of the Local Code, by its express terms did not entitle the Mayor to remove Commissioners at his pleasure, as the limitation of his power to remove by that section is " unless otherwise provided by law or *ordinance.*"

But there is another ordinance which in express terms declares that ordinances which " prescribe that such officer or officers may or shall be appointed biennially, or in the month of February or as other city officers are appointed, *or by any like expression indicating a periodical duty of appointment,* and such words shall not be deemed and taken as otherwise providing by law or ordinance, so as to annul the power of removal intended to be given by said section." (Art. 4, sec. 31, P. L. L.) Article 44, section 46 City Code.

This ordinance is therefore a legislative interpretation placed on the words of Article 44, section 3 of the City Code, which declares that " In the month of February, &c.," the School Commissioners shall be elected. The effect of which is to declare that these words do not give such a definite term to the Commissioners as to deprive the Mayor of the right of removal at pleasure of such Commissioners.

*Charles Marshall* and *John Prentiss Poe*, for the appellees.

1. The original Acts of Assembly passed in 1825 fully warranted the ordinance of 1828 ; that the construction put in 1828 upon the Acts of 1825 was a proper construction ;

that if such construction was originally erroneous, such error, if any, was cured by subsequent legislation found in the Acts of 1836, chapter 220; 1837, chapter 285; 1845, chapter 120; 1849, chapter 146; 1852, chapter 287; 1858, chapter 295, and the Code of 1860, Public Local Laws, Article IV, sections 827 to 833.

2. If it can be assumed, even for the sake of the argument, that the original construction of the Acts of 1825 was erroneous, and that if erroneous, it was not cured by such subsequent legislation from 1836 to 1860, and that consequently from 1828 until 1864 there never existed in Baltimore City a valid, lawfully appointed and legal School Board, the Constitution of 1864 undeniably cured all supposed antecedent defect, removed all possible previous infirmity, and by its express, distinct and unmistakable declaration that " *the School Commissioners of Baltimore City shall remain as at present constituted and shall be appointed, as at present, by the Mayor and City Council, subject to such alterations and amendments as may be made from time to time by the General Assembly or the said Mayor and City Council,*" made absolutely valid and unimpeachable their previously prescribed method of appointment.

3. The Act of 1865, chapter 160, and ordinance No. 74, of June 20, 1866, continued and kept alive as absolutely valid and unimpeachable this method of appointment thus confirmed by the Constitution of 1864.

4. The Constitution of 1867, by the equally express and unmistakable language of section 8 of Article XI, viz : "*All laws and ordinances now in force, applicable to the city of Baltimore, not inconsistent with this Article, shall be and they are hereby continued until changed in due course of law,*" continued in force the provisions of this ordinance No. 74, of June 20, 1866, including the time-honored method of appointment of the Board of School Commissioners therein ordained, until changed in due course of law.

5. This ordinance of June 20, 1866, has never been changed " in due course of law ;" but, on the contrary, so

far as relates to the mode of appointment of the School Board, has been continued and kept alive by the City Code of 1869; by the ordinance of 1876; by the City Code of 1879, and by the City Code of 1893; and that not only has no Act of Assembly been passed changing or modifying its provisions, but that the legal existence of the School Board of Baltimore City, as thus ordained, has been recognized in the Acts of 1868, chapter 191; 1868, chapter 407; 1870, chapter 311; 1872, chapter 377; 1886, chapter 495; 1888, chapter 2; 1888, chapter 98, section 15; in the Code of 1888, Article LXXVII, sections 40 and 41, and sections 88 and 89, and sections 100, 101 and 102; and in Article IV of the Local Code, sections 776 and 777.

6. As the result of these propositions, the appellees were lawfully appointed by the vote of the two branches of the City Council in joint convention for terms of office which have not yet expired, under the provisions Article XLIII of the City Code of 1879, and Article XLIV of the City Code of 1893, duly enacted and ordained in pursuance of authority conferred by law upon the Mayor and City Council of Baltimore.

7. The members of the old board having been duly and lawfully appointed, have not been lawfully removed. Section 31 of Article IV of the Public Local Laws, and section 46 of Article I of the City Ordinances, as contained in the City Code of 1893, do not confer any power upon the Mayor to remove the members of the old board, as was attempted to be done by him.

That his attempted removal of them by the abortive and nugatory appointment of an entirely new board was a usurpation of authority and absolutely void; and that accordingly the appellees, having been improperly and unlawfully attempted to be removed in this peculiar and palpably inoperative mode, now constitute the true and lawful Board of School Commissioners of Baltimore City.

8. As such lawful board they are entitled to bring whatever action, suit or proceeding may be necessary or appro-

priate to assert their legal rights and to re-acquire possession of their official positions and all the records belonging to their office.

9. The remedy resorted to by them, viz.—*mandamus*— is the recognized and appropriate remedy in such cases, according to the now well-established Maryland doctrine.

McSHERRY, C. J., delivered the opinion of the Court.

The Mayor of Baltimore in January last, acting on the assumption that the old School Board had not been legally constituted, appointed a new board during the recess of the City Council. The new board at once took possession of the apartments in the City Hall usually occupied by the School Commissioners, seized upon the books, records, documents and furniture belonging to the School Commissioners of Baltimore City, forcibly ejected the old board from their official quarters, and proceeded, it is alleged, unlawfully and wrongfully to exercise the functions, powers and authority which rightfully belonged to the relators. Thereupon the gentlemen composing the old board collectively filed a petition in the City Court praying that a writ of *mandamus* might be issued against the Mayor and the gentlemen appointed by him as the new School Board, requiring them and each of them individually and collectively "as said pretended Board of Commissioners of Public Schools of Baltimore City," to restore to the relators, "as the legal Board of Public School Commissioners of Baltimore City, the free and unobstructed use of the official quarters and rooms in the City Hall, set apart for the use of the Board of Commissioners of Public Schools, * * * * * * and to surrender and deliver" to the relators, "as such board, all the books, records, documents, papers and archives of every description belonging to" the relators "as such rightful board." The Mayor and the other respondents claiming to be the lawfully constituted Commissioners of Public Schools, filed an elaborate answer in which they averred that the Mayor had, under the city charter, the

power to remove the old board; and that the positions of School Commissioners being vacant in January by reason of the old board not having been legally selected, *or*, in consequence of the removal of the Commissioners by the Mayor, the latter official had, by express provision of law, the authority to fill those vacancies by appointment, which, it is claimed, he lawfully did do during the recess of the City Council. The answer then proceeds to insist that the writ should not issue, because the custody of the room and the possession of the books, papers and records alluded to in the petition are, under the ordinances of the city, not subject to the control of the respondents, but are in charge of the secretary whom they appointed. It is further contended by way of defence that the relators ought not to have heen joined as petitioners, and that the respondents ought not to have been united as defendants in one proceeding. To the answer the relators demurred, and the Court below sustained the demurrer. From the order subsequently passed directing the writ to issue as prayed this appeal was taken by the Mayor and the new board.

Having decided in the case of *Hooper* v. *New, ante,* p. 565, that the members of the old board had been duly and lawfully selected, and were consequently entitled to be sworn in or qualified; the inquiry now is whether the Mayor had the power to remove the old board or to declare the places held by its members vacant, and to appoint their successors? This is the controlling question raised by the demurrer to the respondents' answer.

The removal or attempted removal was made by the Mayor on January the eleventh, 1897, and the method by which it was effected is thus stated by the Mayor himself in a letter addressed by him to Mr. John T. Morris: "I would say that in conformity with my expressed intention contained in my communication to you of the 8th inst. I have removed the gentlemen who have heretofore acted as the School Board, by the appointment and qualification of the gentlemen who have met and organized and who are now in

charge, and whom I solely recognize as the legally consti-
tuted School Board of Baltimore City." In a subsequent
letter the Mayor notified Mr. Morris that he would not per-
mit the old board to occupy any of the apartments of the City
Hall. The removal was summarily made, without charges
of any kind having been preferred or a hearing of any sort
having been accorded.

The power to remove a municipal officer from an office
having a definite term, before that term has expired, is quite
distinct and different from a power to displace an officer
whose tenure is dependent solely on the will or pleasure of
the appointing authority. *Townsend* v. *Kurtz,* 83 Md. 331;
*Miles* v. *Stevenson,* 80 Md. 358. The distinction is plainly
recognized in sec. 31 of Art. 4, Code of Public Local Laws,
the very section under which the Mayor acted in attempt-
ing to remove the old board. Confessedly, if he did not
act under that section there is no other provision of law
which furnishes the slightest color of authority or justifica-
tion for his proceeding. In that section two conditions are
provided for. First. It is declared that "all persons hold-
ing office under the corporation of the city of Baltimore
shall, unless otherwise provided by law or ordinance, hold
their respective offices during the pleasure of the Mayor;"
and, secondly, it is enacted that "no person holding office
by appointment of the said Mayor" shall, if a defaulter to
the city, or, if not a citizen of the United States and the
State of Maryland, or (unless a female), if not a registered
voter of the city, "hold any office of emolument, trust or
profit" under the municipality; and it is made the duty of
the Mayor upon written complaint being filed with him "in-
volving any one of the *above enumerated causes* * * *
to immediately revoke * * * * any commission
issued by him, and vacate * * * * any appointment
made by him," if the charges are sustained by competent
proof, adduced upon a full and fair investigation of the ac-
cusation. Now, it is perfectly obvious that the first con-
tingency provided for by the statute has exclusive relation

to those officers whose tenure of office is not fixed by some law or some ordinance. In those instances, that is, where the duration of the term of the office is not fixed, the statute limits the tenure to the pleasure of the Mayor ; or in other words, provides that all officers for whom a definite term is not prescribed shall hold merely at will, and the power to remove in such cases is essentially included in the power to terminate the tenure. As the term of office of the School Commissioners of Baltimore—a term of four years—is defined and regulated by ordinance, passed pursuant to law, they are not within the first category, and do not hold their offices " during the pleasure of the Mayor ;" and as they do not hold office during the pleasure of the Mayor he cannot at his mere will terminate their tenure. The second contingency provides for a removal of officers *appointed* by the *Mayor ;* and the causes are prescribed for which such a removal may be made. Before the power thus given can be exerted it must appear, *first*, that the officer sought to be removed is one who had been appointed by the *Mayor ;* and, *secondly*, that at least one of the three causes named in the statute, not only has been alleged, but has been sustained by competent proof upon a full and fair investigation. The School Commissioners whom the Mayor undertook to remove were not officers appointed by him at all. He had no part in their selection. They had been chosen by a joint convention of the two branches of the City Council, under and pursuant to the requirements of a valid ordinance. No complaint in writing was made against them alleging that they were defaulters to the city ; that they were not citizens ; or that they were not registered voters in the city. Their removal was not, and could not, therefore, have been legally made under the second of the contingencies mentioned in sec. 31, Art. 4, Local Code ; and as there is no other legislation conferring upon the Mayor a power to make removals, it is clear that his attempted removal of the members of the old board was wholly unwarranted ; and being unwarranted was necessarily ineffectual, and, consequently, created no vacancies.

Nor can sec. 46 of Art. 1 of the Baltimore City Code of 1893 enlarge the power given to the Mayor by sec. 31, Art. 4 of the Public Local Code, in respect of making removals. Sec. 46 provides as follows: "A term of holding shall not be deemed to be created by any resolution or ordinance so as to affect the power of removal given to the Mayor by Article IV, section 31 of the Public Local Laws, because such resolution or ordinance may prescribe that such officer or officers may or shall be appointed bi-annually, or in the month of February, or as other city officers are appointed, or by any like expression indicating a periodical duty of appointment, and such words shall not be deemed and taken as otherwise providing by law or ordinance, so as to annul the power of removal intended to be given by said section." It is perfectly obvious that this section was designed primarily to define what words in the various city ordinances and resolutions relating to the selection of municipal officers should *not* be construed as creating or intending to create a fixed and definite term of office; but it did not, nor could it, make a definite term a mere holding at the pleasure of the Mayor, nor give to him the power to remove as an incident of the power to terminate the tenure, in instances where the power to remove did not antecedently exist. Sec. 46 of the ordinance is simply declaratory of the meaning of prior ordinances. Its import is that when the phrase bi-annual appointment or other equivalent expression is used in ordinances relating to municipal officers, it shall not be treated as establishing a fixed and definite term; but sec. 46 could not override the other provisions of sec. 31 declaring in effect that when the term is a fixed one the tenure shall not be at the pleasure of the Mayor, and providing that a removal from an office having a definite term and filled by appointment of the Mayor must be made for the causes, or one of the causes, specifically assigned in the statute and in the mode and by the method therein prescribed. Sec. 46 had, and necessarily could have had, no such effect as to give to the Mayor

the absolute, arbitrary and unrestricted power to remove from an office, at his mere pleasure, *any* officer holding for a definite term under a city ordinance ; and if it had undertaken to do so it would have been palpably in conflict with the provisions which carefully confine that power to instances where the Mayor has made the appointment and where no term is fixed for the office, and to cases where the causes set forth in the statute are applicable ; and which provisions also sedulously guard against both a hasty and a despotic use of the power when these enumerated causes are relied on. The ordinance embodied in sec. 46 neither broadened nor narrowed the effect or the scope of the statute, and it certainly gave no power to remove where none previously existed under the statute, and conferred no authority to exercise such a power in any way different from the way pointed out in the statute—summarily, when the tenure is at will ; after proof and investigation when the term is definite.

It follows, then, that as the power of the Mayor to summarily remove or to remove for cause is confined to classes of incumbents within which classes the School Commissioners do not come, his attempted removal of those officers was unlawful ; and that they are still rightfully in office, and are, therefore, entitled to the possession of the apartments in the City Hall—formerly occupied by them— and to the books, papers and archives described in the petition, unless the other grounds of defence are sufficient to defeat their demand.   Entertaining the views we have expressed on the merits the technical defences become comparatively unimportant.   We take it for granted the case was not brought here to be disposed of on a purely technical ground.   The importance of speedily determining, finally and fully, this litigation, involving as it does, the stability of the Public School system as it has existed for years in the city of Baltimore, is obvious.   The issues raised in these cases are momentous and far reaching in their consequences ; and the public interests at stake require that the agitation, the jarring and the excitement, which a prolonga-

tion of these unfortunate controversies will surely provoke, should be promptly and effectually set at rest by a decision on the merits, rather than kept alive by fruitless contentions over mere technical forms of procedure.

As to the first of these technical grounds, viz., that the respondents are not in possession of the apartments or the books and archives, but that their secretary is, little need be said. The secretary is not a bald usurper, holding by force against both the relators and the respondents. Whatever the nature of his possession is, it is such only as the respondents have conferred or attempted to confer. He is *their* agent—his possession is their possession, simply because he is *their* appointee. It is the plain duty of the respondents to surrender up to the relators who are the rightful School Commissioners, what has been demanded of them ; and they cannot be permitted to evade the perform-. ance of that obligation by sheltering themselves behind their own subordinate. *Co. Com.* v. *Banks*, 80 Md. 325.

What the relators seek is not relief purely personal or pertaining to each individually ; but they demand as the lawfully constituted Board of School Commissioners the possession of premises to which as members of the School Board, and solely as such members, they are entitled. It is very questionable whether each one individually would have had a right to a *mandamus* to obtain possession of the rooms set apart for the School Board ; but it is perfectly certain that collectively and in their official capacity, they may make the demand and enforce the right, which is a right not held by them separately, but pertaining to them collectively as an official body.

We have not deemed it necessary to go into a consideration of the question as to the power of the Mayor to fill vacancies during a recess of the City Council, for the reason that no vacancies exist. Nor do we feel called on to enter into an extended refutation of the Mayor's asserted right to create a vacancy by appointing some one else than the incumbent to the same office in such a case as this ; be-

cause we held in *Hooper* v. *New* that the old Commissioners
had been legally appointed, and we hold now that they
were not subject to be removed *by the Mayor* under sec. 31,
Art. 4, Local Laws, or under any other law or ordinance;
and that, therefore, there were no vacancies to be filled.

It results from what has been said in this opinion that the
order appealed from must be affirmed.

> *Order affirmed with costs above and
> below.*

(Decided April 8th, 1897).