# WALTER T. JACKSON *vs.* W. WORTHINGTON HOPKINS.

*Mandamus—Demurrer to Part of Answer—Religious Socie-
ties—Petition by Alleged Vestryman for Writ of Man-
damus Enforcing the Right to Inspect the
.Records of the Parish.*

When the answer to a petition for mandamus is divided into
distinct paragraphs, a demurrer may be filed to some of the
paragraphs, although a motion to strike out the objection-
able or insufficient matter would be the more regular pro-
cedure.

Petitioner alleged that he was a vestryman in a certain Protes-
tant Episcopal Church and as such was entitled to inspect its
records; that the defendant was registrar of the church, kept
the records and was in possession, but refused to allow peti-
tioner to inspect them. The petition prayed for a mandamus
to enforce this right of inspection. The defendant alleged
that the records were under the control of the vestry and were
not in his possession. *Held,* that a demurrer to this part of
the answer was properly overruled.

.A petition for a mandamus asked that the registrar of a church
be required to produce its records on the ground that the peti-
tioner was a vestryman of the church, and as such entitled to
make the inspection. Respondent denied that the petitioner
was a vestryman. A demurrer to this answer was made and
overruled. *Held,* that upon petitioner's failure to plead to,
or to traverse, the answer, the petition should be dismissed.

Even if it be conceded that a vestryman or a member of an
Episcopal church, incorporated under the Vestry Act of 1798,
has the right in ordinary cases to require the registrar of the
church to allow him to inspect the records, yet he will be
denied a writ of mandamus for this purpose if the evidence

in the case shows that he has been disloyal or disobedient to the ecclesiastical authorities.

If it appear that the petitioner for such writ conducted an independent Sunday-school and solicited the attendance there of children in opposition to the school of the church, and had refused to abandon the same, although directed so to do by the Bishop and Bishop Coadjutor of the diocese; that the petitioner with others had refused to account for certain moneys of the church obtained by them, and had refused to deliver certain records of the church to the vestry, these facts disentitle the petitioner to the writ asked for.

*Decided June 23rd, 1910.*

Appeal from the Circuit Court for Harford County.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS and URNER, JJ.

*Henry A. Osborn, Jr.,* and *John L. G. Lee* (with whom was *Robert H. Archer, Jr.,* on the brief), for the appellant.

*S. A. Williams* and *A. Freeborn Brown,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from an order refusing to grant a mandamus against the appellee, on the application of the appellant. The petition alleges that the appellant is and has been for the past year a legally constituted and qualified trustee and vestryman of St. John's Protestant Episcopal Church in St. John's Parish of Harford County, Maryland, which is one of the parishes of the Protestant Episcopal Church of the United States in the Diocese of Maryland, established under the provisions of an Act of the General Assembly of Maryland of the year 1798, entitled "An Act for the establishment of vestries for each parish in this State." It then alleges that the petitioner is a resident of said parish a bap-

tised member of the Protestant Episcopal Church and was duly elected according to the rules and regulations of said church to the office of vestryman thereof, which office he now holds.

It avers that the defendant is and for the past year has been the register of said St. John's Protestant Episcopal Church, and in the performance of his duty as register the defendant has kept a record of the minutes and other proceedings of the vestrymen, in their conduct, management and control of said church during the past year, which is kept by him for safe keeping; "That your petitioner, as vestryman as aforesaid, is and was entitled to the inspection of the minutes and proceedings of the vestry of said church as aforesaid, and it is and was the duty of the said register to produce and allow your petitioner to inspect the same." It further alleges that "your petitioner as vestryman as aforesaid has at the regular meetings of said vestry and at other times during the past year repeatedly requested and demanded of the said register the production of the records of said minutes and other proceedings of said vestry during the past year in the possession and keeping of said register as aforesaid, in order that your petitioner might inspect and examine the same. But said register has wilfully and wrongfully refused to comply with your petitioner's said request and demands, and has wilfully and wrongfully neglected, failed and refused to allow your petitioner to inspect or in any way have access to the records of said minutes and proceedings." It further charges: "That it is and was necessary for your petitioner to have access to said records of said minutes and proceedings for the proper performance of his duties as vestryman as aforesaid, and for the protection of the rights and properties of said St. John's Episcopal Church," and that the neglect, failure and refusal on the part of the register is to the serious injury and damage of said church, and to the great inconvenience and injury of the petitioner.

It then prays that a writ of mandamus be issued and directed to the defendant, commanding him to produce the records of the minutes and other proceedings of the vestry of said church during the past year, "for the inspection of your petitioner as vestryman as aforesaid, and to allow him full access to the same."

The defendant filed a long answer, divided into eighteen paragraphs. The petitioner demurred "to the causes, and each one of them, assigned by the defendant why the mandamus shall not issue." The Court sustained the demurrer to paragraphs one, two, three, twelve, sixteen and eighteen of the answer, and overruled it as to the others. The petitioner then filed what is called in the record "Waiver and consent of petitioner in reference to pleading to answer," and a rule replication was laid. Then the following docket entries appear: "Petitioner called, not answering, judgment *causa nisi*. 21 March, 1910, judgment by default for want of a replication and writ refused with costs to the defendant."

It will be noticed that the pleadings and entries are somewhat unusual in mandamus proceedings. Although it was distinctly decided in *Hardcastle* v. *Md. and Del. R. R. Co.,* 32 Md. 32, that the petitioner can demur to the answer, which has been followed in a number of cases since, we do not recall any in this State in which a demurrer to a part or parts of an answer has been filed. Where, however, the answer is divided into paragraphs, or in a way that such portions as are objected to can be segregated from the rest of the answer, we can see no particular objection to that method of procedure, although it would perhaps be more regular to file a motion to strike out or expunge the objectionable matter. It simplifies the pleadings and lessens the expense of trials to in some way get rid of irrelevant, impertinent or insufficient matter set up in the answer, and as was said in *Creager* v. *Hooper,* 83 Md. 490: "Much of the former strictness which applied to mandamus proceedings

has been done away with, and they have been made to approach more nearly to other forms of action." In that case a demurrer to the answer was overruled, leave was given to the petitioner to plead to it and upon his declining to do so, the petition was dismissed. As a demurrer was filed by the appellant to each cause assigned, as well as to the whole answer, he could not consistently object to the action of the Court in sustaining the demurrer to some paragraphs, and has not done so, but we felt called upon to refer to the practice followed, as it is a departure from the former strictness in mandamus proceedings. We will first consider the case with the paragraphs to which the demurrer was sustained eliminated, and then as there was a demurrer to the whole answer, which was overruled, we will as far as we deem proper pass on that.

It will not be necessary to discuss each paragraph separately, but we will state our conclusions as to some of the more important ones. We do not see any objection to the fourth, as that is an answer to a part of the petition which alleges that the records are kept by the defendant for safe keeping, and that it was his duty to produce them. That paragraph alleges that as register the respondent is under the control of the vestry, that the records are under its exclusive control, and the defendant then names those whom he claims are its members and alleges that they should be made defendants with him. If those allegations are correct, especially when taken in connection with the tenth paragraph, in which respondent denies that he has kept the records during the past year, or that they are held by him for safe keeping and shows by whom they have been kept, the members of the vestry ought to have been made parties. If the records are not kept by him, are not in his possession, and are under the exclusive control of the vestry, a mandamus against the defendant would be of no avail. The mere fact that he is register would not authorize the Court to grant a mandamus, commanding him to produce the records, under

those circumstances, for he might not be able to do so. The vestry could not defend against a petition for a mandamus on the ground that the register had the books, as he is appointed by them and subject to their orders (*County Commissioners* v. *Banks,* 80 Md. 325, and *Hooper* v. *Farnen,* 85 Md. 600), but it does not follow that the respondent could be required to produce them merely because he holds the office of register, if in point of fact some other person is acting and he has no control over the records.

Paragraph V is: "That said petitioner is not and has not for the past year been a legally constituted and qualified trustee or vestryman of St. John's Church, St. John's Parish, Harford County,"—that being the correct name of the church, as alleged in the answer. That is not only a denial of the allegation in the petition, using the negative of its very language, but it is material. So is the allegation in Paragraph VIII which says: "This respondent denies that said petitioner now holds the office of vestryman of said Parish," and in Paragraph XIV: "That said petitioner is not a vestryman of said church." The appellant seeks to avoid the effect of such denials by claiming that he is entitled to the mandamus as a baptized member of the church.

Without now stopping to determine whether such allegations as are in the petition are sufficient to show that the petitioner is such a member of this particular church as to entitle him to the benefit of section 310 of Article 23 of the Code, or whether that section applies to Protestant Episcopal Churches established under the Vestry Act (which is at least doubtful), it is clear that the petitioner has not asked for a mandamus on that ground, nor has he asked that the defendant be required to produce the records for his inspection as a member of the church. On the contrary, as we have seen, the petition is based entirely on his right as vestryman, and the only prayer in it is for a mandamus commanding the defendant to produce the records "for the inspection of your petitioner as vestryman as aforesaid, and to allow him full access to the

same." But that is not all. The petition alleges that the request and demand made by him was *"as vestryman,"* and that it was necessary for him to have access to the records "for the proper performance of his duties *as vestryman* as aforesaid." If he is entitled as a member of the church to make such demand and to inspect the records, possibly the defendant, if he could have done so, would have allowed him to inspect them as a member, but when he made his demand as a vestryman, and if he was not a vestryman, as the answer alleges, the defendant might well have refused to grant his request and accede to his demand, because he would thereby recognize him as a vestryman. Compliance with such demand would be very good evidence to be used in a contest for that office. Indeed, it might well be supposed from the petition that its object was to have the petitioner's right to the office of vestryman determined; and if not it is difficult to see any worthy object in the proceeding.

We are, therefore, of the opinion that the allegation that the petitioner is not a vestryman, and has not been for the past year, is a complete answer to his application for the mandamus, and that the lower Court was right in making the disposition of the case it did, on that ground regardless of other defenses. The petitioner did not deny that allegation, but demurred to it, thereby admitting it, and then refused to plead to or traverse the answer.

That is sufficient to dispose of the case, but as there was a demurrer to the whole answer, and as the appellant asked us to remand the case so that proper issues may be determined, if we reached a conclusion that the action of the lower Court should be sustained, we will consider that request and incidentally the demurrer to the whole answer. Ordinarily we would not decline to comply with a request to remand a case which had been disposed of entirely on the pleadings, but if there is one class of cases which, more than all others, ought not to be encouraged, it is of those involving controversies in churches. Men will and do differ in their religious

beliefs and creeds, and those of the same faith often disagree as to what is best or desirable for their own denomination or the particular congregation with which they are connected. They are entitled to the protection and benefit of the laws of the land in so far as their rights are involved in the temporal affairs of the church, but it cannot be doubted that when even such temporal affairs are brought into Court the church whose members are thus involved is likely to be more or less injured.   Church controversies, like family quarrels, are often bitter, and those not actively engaged in them sometimes suffer as well as the active participants.   If there is one place on earth above all others where peace ought to reign it is in the Church of God, and whatever our religious belief may be, all persons interested in the elevation of mankind, whether they be Jews or Gentiles, Roman Catholics or Protestants, should deplore any controversy that may tend to weaken or injure a congregation of any creed organized for religious purposes.   It behooves Courts of justice, therefore, not to do more than the law requires if action by them may tend to widen existing breaches.   If we remanded this case, it would require an amendment of the petition, which would practically make it a new case, and if the substantial facts alleged in this answer, outside of those that deny that the petitioner is a vestryman, be true, as for the purposes of the demurrer they must be assumed to be, it would seem impossible for the petitioner to sustain the right to a mandamus on the ground now relied on—that he is a member of this church.

In the appellant's brief there is a quotation from JUDGE BRYAN's opinion, in *Brayshaw* v. *Ridout,* 79 Md. 454, where, after stating how members are admitted in the Protestant Episcopal Church, he added: "And its members cannot be expelled except by the administration of ecclesiastical discipline adjudged in the due course of ecclesiastical authority."   Although that opinion was not the one adopted by the Court, as the other judges concluded that: "It is not material to the decision of this case for us to determine how, or by

what authority, a person becomes a member," yet the one which was adopted by the Court did say, that, "membership in a church is an ecclesiastical matter depending upon the law of the church itself," which expression is broad enough to include both the admission to and expulsion from a church, and is not in conflict with what Judge Bryan said as to how members can be expelled. In what we have to say, therefore, in this branch of the case, we will assume that petitioner was a member of this church (although that is neither admitted nor denied in the answer) and that no action has been taken by the church authorities which terminated his membership. But with that assumption, and conceding without deciding, that a member of a Protestant Episcopal Church, established under the Vestry Act, may ordinarily have standing in a Court of law to ask for a mandamus to require the registrar, or other person having the custody of the records of the church, to permit him to inspect them, there are other facts alleged in the answer which, if correct, would require the Court to deny this writ.

It must be remembered that mandamus is not a writ of right, but one of sound judicial discretion. In *George's Creek Coal and Iron Co. v. County Commissioners,* 59 Md. 255, this Court through Judge Alvey, said: "The application for the writ being made to the sound judicial discretion of the Court, all the circumstances of the case must be considered in determining whether the writ should be allowed or not; and it will not be allowed unless the Court is satisfied that it is necessary to secure the ends of justice, or to subserve some just or useful purpose." It was said in *State, Relation of McClellan, v. Graves,* 19 Md. 351, that the writ "is based upon reasons of justice and public policy, to preserve peace, order and good government. It is compared to a bill in equity for specific performance. *Evans' Prac.,* 404. Not a writ of right, it is granted not as of course, but only at the discretion of the Court to whom the application is made, and this discretion will not be exercised in favor of

applicants, unless some just or useful purpose may be answered by the writ." In *Weihenmayer* v. *Bitner,* 88 Md. 325, where a stockholder had demanded an inspection of certain records of the corporation which the statute in express terms gave him the right to make, this Court, although sustaining his right to a mandamus, said: "The right is given to him as a stockholder by statute, and is absolute and not made to depend upon any circumstance but the ownership of the stock. It is easy to see that there might be good reasons for refusing an application; for instance, if it were made for some evil, improper or unlawful purpose. And if such purpose were alleged and proved, the writ would be denied."

We might cite many other cases showing some of the fundamental and familiar principles upon which the right to this writ depends, but the principles announced in the above are in our judgment sufficient to require us to hold that the petitioner is not entitled to the writ, if the matters alleged in the answer are true, even if it be conceded that he is still a member of this church. We do not trespass upon the jurisdiction of ecclesiastical authority when we assert, as we do, that a petitioner for this writ, on the ground that he is a member of a church and has been refused an inspection of its records, will be denied it, if the facts show such disloyalty to it and to those in authority as this answer alleges— at least unless there be some better right to it shown than there is in this case. It would be difficult to see how the writ could "subserve some just or useful purpose," or help "to preserve peace, order and good government," if it be issued in favor of a member of a church, who with others, as alleged in the answer, "have organized a Sunday-school, which they describe as an Episcopal Sunday School and conduct the same in direct opposition to the Sunday-school of said St. John's Church, and solicit the attendance of the children of said congregation at said Sunday-school, and have refused at the direction of the said Bishop of the Diocese of Maryland and also at the direction of the Rt. Rev. John

Gardner Murray, Bishop Coadjutor of said Diocese of Maryland, to abandon said school."

But that is by no means all that the answer alleges. It charges that after the resignation of a former rector, the petitioner and others named, "obtained possession of certain moneys belonging to said church, for which they and each of them have failed and refused to account with said vestry;" that the petitioner received from that rector the keys of the Parish house to be delivered under the direction of the bishop to the vestry, but he failed and refused to deliver all of them as required; that minutes or records of the proceedings of the vestry from May 14, 1908, to January 13, 1909, were kept by another by reason of the disability of the respondent, that they were written up and delivered to the former rector, were approved by and were the property of the vestry; that they were kept by said rector until he left Havre de Grace, when he delivered them to the petitioner for the vestry, but they were withheld by the petitioner and are still withheld by him or his attorney, and that on said minutes are the records of the expenditure of large sums of money for and on account of the church. It also alleges that "the said petitioner and other minority members of said congregation have pledged themselves during the past year not to contribute to the support of said St. John's Church," and that he and his associates "have taken from the said St. John's Church Sunday-school papers, prayer books, hymnals and other property belonging thereto, and have withheld the same and used them in connection with said independent Sunday-school." It also alleges that these acts were committed with intent to injure and disrupt St. John's Church, and that the petition was filed "with intent to vex and hinder the vestry of said church in its management of the affairs thereof and to destroy the same."

The demurrer to the answer admitted these allegations to be true, for the purposes of the demurrer, and while it may be that some of them would be denied by the petitioner if

the case were remanded, he did not adopt that course when
he had the opportunity, and we cannot assume that he could
now successfully deny them. Accepting them as true, as we
must in disposing of the case as now presented to us, we have
no hesitation in saying that however an ecclesiastical body
may regard such a member, a Court of law should not grant
him this writ for the purpose of obtaining an inspection of
the records of the church which he is alleged to thus act to-
wards, in the absence of some better defined legal right to do
so than this record discloses.

Of course, we do not understand it to be charged or sug-
gested that the petitioner and those associated with him are
acting dishonestly in withholding money, records or other
property belonging to the church, but we assume it is only
intended to charge that they are being withheld as a result
of this unfortunate dissension in the church. We say "un-
fortunate dissension" because the records of this and other
Courts show how such controversies between those who are
presumed to have the interests of their respective churches
at heart have sometimes done them great injury, as well as
lessened their own influence for good.

If then we could construe the petition to mean that the
petitioner is seeking relief as a member, and if we assume he
is still a member under the church government, we could not
under the circumstances hold that he was entitled to the
writ of mandamus, for although we must leave to ecclesiasti-
cal bodies the determination of such questions as who shall
be admitted to or continued in their churches, when the aid
of a Court of justice is sought in a mandamus proceeding,
it must apply its established rules and determine whether
the conduct of a member is such as entitles him to that writ.
The matters alleged in the answer, if they are true, are of
such character as to undoubtedly preclude the petitioner
from having the benefit of it, either as vestryman or as a
member of this church, and as we are of the opinion that the
Court did not err in refusing the writ, but sustained the

demurrer to some paragraphs which could properly have been permitted to remain in, and as we do not think it is a case which calls upon us to remand, we will simply affirm the order dismissing the petition.

> *Order affirmed, the appellant to pay the costs, above and below.*