## BOARD OF SUPERVISORS OF ELECTIONS FOR DORCHESTER COUNTY *v.* COUNTY COMMISSIONERS OF DORCHESTER COUNTY

[No. 3, October Term, 1952 (Adv.)]

*Decided, per curiam, April 10, 1952.*

*Opinion filed May 8, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Frederick P. McBriety,* with whom were *Vernon S. Bradley* and *McBriety and Mace* on the brief, for appellant.

*V. Calvin Trice* and *William D. Gould,* with whom were *Gould and Edmondson* and *Harrington and Thompson* on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

The Board of Supervisors of Elections for Dorchester County filed a petition for *mandamus* to compel the County Commissioners of Dorchester County to pay for voting machines purchased from the Automatic Voting Machine Corporation, of Jamestown, New York. Respondents demurred to the petition, and the Court sustained the demurrer. Petitioners appealed here from the order dismissing their petition.

The petition alleges: (1) On July 12, 1951, petitioners voted to purchase 43 voting machines, and notified re-

spondents of that action; (2) on September 25, 1951, petitioners signed a contract to purchase the machines with the understanding that respondents would pay for them, the first installment to be paid on or before March 1, 1952, and a copy of the contract was filed with respondents; (3) the machines were delivered on January 15, 1952, and were distributed throughout Dorchester County with the knowledge of respondents; but on March 6, 1952, respondents notified petitioners that they would not pay for them, although the use of voting machines in all elections in the county, beginning with the primary election in May, 1952, is mandatory; (4) petitioners have the sole power to acquire voting machines, and respondents have the sole power to pay for them; (5) the title to the machines purchased by petitioners lies in the vendor, and because of the default in payment they can be repossessed by the vendor at any time; (6) the law requires a new registration beginning April 7, 1952, but petitioners cannot make arrangements for the registration and the primary election and prepare instructions for the voters, unless they have assurance that respondents will pay for the machines; and therefore there must be prompt relief to enable petitioners to continue their work and to give the voters the opportunity to exercise their right of suffrage.

The writ of *mandamus* is an extraordinary remedy afforded to prevent a failure of justice and to preserve peace, order and good government. *State ex rel. McClellan v. Graves,* 19 Md. 351, 374, 81 Am. Dec. 639. *Mandamus* is not available except where the petitioner has a clear legal right to compel performance of a certain positive duty by the respondent and where the law affords no other adequate remedy. *Jackson v. Hopkins,* 113 Md. 557, 78 A. 4; *Hummelshime v. Hirsch,* 114 Md. 39, 79 A. 38; *Pressman v. Elgin,* 187 Md. 446, 451, 50 A. 2d 560, 169 A. L. R. 646. It has been held, for instance, that the State Comptroller, invested by the Constitution with power to adjust and settle public accounts, cannot

be compelled by mandamus to perform any act which involves the exercise of judgment and discretion. *Green v. Purnell,* 12 Md. 329.

But it is well established that the court may compel public officials in a proper case to perform a ministerial duty. A ministerial duty, the performance of which may in a proper case be required by *mandamus,* is a duty in respect to which nothing is left to discretion and is a definite duty imposed by law and arising under conditions admitted or proved to exist. *Magruder v. Swann,* 25 Md. 173; *Hall v. Tabler,* 171 Md. 449, 189 A. 206. Thus, where a statute requires the County Commissioners to levy for and pay a certain claim, *mandamus* will lie to compel them to provide by levy for its payment. *County Com'rs of Worcester County v. Melvin,* 89 Md. 37, 42 A. 910.

The instant case calls for construction of two Acts of the Maryland Legislature, Laws 1949, ch. 734, and Laws 1951, ch. 639, amending the Maryland Election Law. Code Supp. 1947, art. 33, sec. 85.

The 1949 Act provides in sub-section (a) that the Boards of Supervisors of Elections of Baltimore City and of the respective counties shall have the power to use voting machines in all elections, general, primary and special. It then provides: "The said Boards, with the approval of, and upon such terms as may be agreed to by, the County Commissioners of their respective counties or the Mayor and City Council of Baltimore City, as the case may be, may purchase, rent, lease or otherwise acquire such number of voting machines as may be required to equip any or all of the polling places in said city or county, as the case may be, and may determine which precincts shall be first equipped therewith; * * *. In the precincts in which voting machines are used, the conduct of all elections, general, primary or special, shall be as hereafter provided in Sections 87 to 97, inclusive, of this Article, instead of as provided in Sections 71 to 81, inclusive, except as specifically therein stated; provided, however, that in the event

that the number of names or the number of questions submitted for vote at any election is too large for the practical use of voting machines, the said Boards of Supervisors shall supply paper ballots in the usual form for use in voting for such excess offices and questions as they shall deem advisable."

Sub-section (b) provides that in all elections in Harford County the use of voting machines in every polling place shall be mandatory, and the County Commissioners shall provide the necessary funds and shall appoint a custodian of voting machines and a deputy custodian, whose duty it shall be to prepare the machines for use. It finally provides: "This sub-section is not intended to limit in any way the powers conferred by subsection (a)."

The 1951 Act added sub-section (c) to Section 85. This sub-section provides as follows:

"(1)  In all elections in Dorchester County, the use of voting machines shall be mandatory, beginning with the primary election to be held in 1952, and it shall be the duty of the County Commissioners of said County to provide the necessary funds to enable the Board of Supervisors of Elections to purchase, rent, lease, or otherwise acquire and provide voting machines for all polling places in said County.

"(2)  Said County Commissioners shall appoint a custodian of voting machines and a deputy custodian whose duty it shall be to prepare the machines for use. * *· *

"(3)  Said Board of Supervisors of Elections shall have power to rent or lease any of said voting machines to the City of Cambridge or any other city or town in Dorchester County * * *.

"(4)  This sub-section is not intended to limit in any way powers conferred by sub-section (a)."

Respondents argued that although the 1951 Act makes the use of voting machines in Dorchester County mandatory, yet in view of the proviso that it was not intended to limit the powers conferred by the 1949 Act, the

Election Supervisors could acquire the machines only "upon such terms as may be agreed to" by the County Commissioners.

We do not think that construction is tenable. Under the 1949 Act, the Election Supervisors had the power to acquire voting machines only "with the approval of, and upon such terms as may be agreed to, by the County Commissioners." The 1951 Act declares that the use of voting machines shall be mandatory in all elections in Dorchester County, beginning with the primary election in 1952, and that it shall be the duty of the County Commissioners to provide the necessary funds to enable the Election Supervisors to acquire voting machines for all polling places in Dorchester County. The language of the 1951 Act is clear and explicit. The words "with the approval of, and upon such terms as may be agreed to, by the County Commissioners" were omitted. The Act imposes upon the County Commissioners only one power, the power "to provide the necessary funds."

What then is the purpose of the fourth paragraph of sub-section (c)? Evidently the purpose of this proviso is to make the intention of the Legislature absolutely certain (1) that in all counties, except Harford and Dorchester, the Election Supervisors shall continue to have the power to acquire voting machines with the approval of, and upon such terms as may be agreed to, by the County Commissioners; and (2) that in all precincts in which voting machines are used, the conduct of the elections shall be as prescribed in sub-section (a).

We, therefore, conclude that the Election Supervisors have the undoubted right to compel the County Commissioners to make payment for voting machines legally purchased by authority of the Legislature. Payment for these machines is a ministerial duty.

As we have decided that the Legislature vested in the Election Supervisors the exclusive power to make all necessary arrangements to acquire the voting machines,

120

and imposed upon the County Commissioners the duty to provide the necessary funds for that purpose, we reversed the order appealed from.