# MARYLAND REPORTS.

APRIL TERM, A. D., 1875.

JOSEPH G. MILLER *vs.* EDMUND R. ESCHBACH, and others.

*Question as to the Legality of the Election of an Elder in the Evangelical Reformed Church of Frederick—Binding force of a long established Church Usage.*

The appellant by his petition alleged that on Easter Monday, 1874, he was re-elected an elder in the Evangelical Reformed Church of Frederick, and that he was entitled to be admitted into said office as a member of the consistory of said Church, and to exercise and perform the duties thereof; but that the appellees had excluded, and continued to exclude him from the exercise of his authority as a member of said consistory; and that E. as the officiating minister in said Church refused to induct him "into the discharge of his active duties by prayer, and the extension of the right hand of fellowship." The petitioner prayed that a writ of *mandamus* might be issued commanding the appellees to abstain from further excluding him from acting as an elder of said Church, and commanding the said E. to induct him into office as an elder and member of said consistory. The appellees answered, denying that the petitioner was legally elected an elder at the election referred to; and among other reasons why a writ of *mandamus* should not be granted, averred that, it had been the usage of the consistory of the Church for a great many years to make nominations for elders and deacons, and and for the officiating minister to announce the names of the nominees from the pulpit for two successive Sundays previous to Easter Monday, the day of the election; and none could be voted for save and except those who had been proclaimed from the pulpit as nominees; that the action of certain

1                              v. 43.

Miller *vs* Eschbach, *et al.*

members of the congregation, on said Easter Monday, in nominating and voting for the petitioner, and declaring him elected as an elder, was illegal and void, because he had not been nominated by the consistory and announced from the pulpit.. To these reasons the petitioner demurred. The usage of the Church in respect to the selecting of elders, was not in conflict with the charter of incorporation, and had never been annulled or altered. HELD:

1st. That the usage of the consistory in selecting and announcing the names of persons to be voted for as elders, and the custom of the members of the Church in voting for those only who had been so selected and announced, was legal, and was binding upon the congregation.

2nd. That such usage having been disregarded in the case of the petitione·, he was not duly elected to the office of elder, and consequently was not entitled to the writ of *mandamus*.

APPEAL from the Circuit Court for Frederick County.

This was an application by the appellant for a writ of *mandamus* The petitioner, in substance alleged that on Easter Monday, 1874, he was re-elected an elder in the Evangelical Reformed Church of Frederick, and that he was entitled to be admitted into said office as a member of the consistory of said church, and to exercise and perform the duties thereof; but that the appellees had excluded and continued to exclude him from the exercise of his authority as member of said consistory ; and that the Rev. E. R. Eschbach, as the officiating minister in said church, had refused, and still refused, to *induct* him "into the discharge of his active duties by prayer, and the extension of the right hand of fellowship," and prayed that the writ of *mandamus* might be issued . directed to the appellees, commanding them to abstain from further. excluding him from acting as an elder of said church, and commanding the said Eschbach to induct him into office as an elder and member of said consistory.

Two of the defendants answered, admitting the allegations of the petition, and consenting to the granting of

the writ as prayed.   The other defendants in their answer denied that the petitioner was legally elected an elder at the election referred to, and contended that Lewis Markell and John W. Birely were elected as elders, according to the usage and custom of the congregation of said church.

They charged and averred that it had been the custom of the consistory of the church for a great many years, to make nominations for elders and deacons, and for the officiating minister to announce the names of the nominees from the pulpit for two successive Sundays previous to Easter Monday, the day of the election ; and none could be voted for, save and except those who had been proclaimed from the pulpit as nominees ; that the action of certain members of the congregation, on said Easter Monday, in nominating and voting for the petitioner, and declaring him elected as an elder, was illegal and void, because he had not been previously nominated by the consistory and announced from the pulpit of said church ; and they charged that such usage of the consistory in selecting and announcing the names of the candidates, and the custom of the members of the church in voting for those only, who had been so selected and announced, " was legal, obligatory, binding and necessary ;'' that the nominating and voting for said petitioner, at the congregational meeting on Easter Monday, was irregular, and contrary to law, and that complaint of said irregularity, and claim of said petitioner, was, by the complaint of Charles H. Keefer, carried to the classis of said church, which convened on the 4th day of June, 1874, at Manchester, in Carroll County, Maryland ; that the classis considered said complaint, and the petition of Miller and others, to said classis, and decided that the pretended election of the petitioner to the office of elder, was irregular and void ; that the classis passed an order directing that John W. Birely and Lewis Markell, should be ordained

and inducted into office as elders, &c., and that said action and decision of the classis was conclusive and binding upon the petitioner in this cause.

To all the reasons assigned in the respondents' answer, why a *mandamus* should not issue as prayed, except the seventeenth, the petitioner demurred, and the seventeenth he moved the Court to strike out. The Court sustained the motion to strike' out the seventeenth reason of the respondents; sustained the demurrer to the eighth and ninth reasons, overruled the demurrer as to the other reasons, and dismissed the petition. The petitioner thereupon appealed.

The cause was argued before BARTOL, C. J., BRENT, GRASON, MILLER, ALVEY and ROBINSON, J.

*Charles W. Ross, G. K. Shellman* and *William A. Fisher*, for the appellant.

*C. V. S. Levy, Wm. P. Maulsby, Jr.* and *Francis Brengle*, for the appellees.

BRENT, J., delivered the opinion of the Court.

The question which lies at the foundation of this case, is the election of the appellant, as one of the elders of "The Evangelical Reformed Church of Frederick," on Easter Monday, of the year 1874. If not duly and legally elected to fill that office, he cannot be entitled to the *mandamus* asked for, no matter what might be the opinion of this Court upon the other many and interesting questions presented in the very elaborate arguments of the several able counsel representing the respective parties.

To the legality of the election of the appellant, a custom and usage of the church of long standing is interposed. The appellees, among other causes and reasons set forth

in their answer, why a writ of *mandamus* ought not to be granted against them, aver,

First, " That by a usage in said Church, dating back many years before the incorporation of the church in the year 1848, under the provisions of the Act of 1802, ch. 111, and continuing unbroken and without objection up to Easter Monday last, (the time of the election in question,) it was the privilege, prerogative and duty of the consistory of said church, to select from those of the congregation in their opinion best qualified for the positions, four names of members of said church, as candidates for the office of elders, and four other names as candidates for the office of deacons, out of and from which said four names as candidates for the office of deacons, it was the privilege and duty of the congregation to select two deacons, and out of and from said four names as candidates for elders, it was the privilege and duty of the congregation to select two elders, that by said unbroken and unopposed usage, the congregation, at the meeting for election of elders and deacons, held on Easter Monday of each and every successive year, were confined to, and could select only the two elders and the two deacons, there to be chosen from the eight men, who had been nominated as aforesaid by the consistory."

And secondly, that by the same long continued and uninterrupted custom, it was "the usage in said church for the pastor in charge of said church, or in the absence of said pastor, for the preacher occupying the pulpit thereof, to announce on at least two successive Sundays before Easter Monday in each and every year, the names of all those who were candidates to be voted for at the election on the Easter Monday succeeding; that this was the only way in which it was made known to the congregation, who were the candidates who would be balloted for at the said election on the Easter Monday succeeding."

The appellant was not nominated by the consistory, nor announced from the pulpit as one of the candidates for the office of elder. He received, however, a majority of the votes cast at the election in question, and is his election valid notwithstanding the non-observance of the custom and usage referred to?

A long continued, unbroken and unopposed custom and usage, such as is set up by the defence in this case, is held by all the authorities, to which we have been referred, to be in the nature of a by-law, and to be equally obligatory and binding. Like a by-law, it may be annulled or altered by the mode and in the manner proper to be taken by the corporation for that purpose, or it will be held by the Courts to be inoperative, if in conflict with the charter of incorporation. That this custom has been annulled or altered, does not appear from the record before us, nor is it claimed by the appellant that this has been done; but it is insisted, that it is in conflict with the charter of incorporation, adopted by this congregation in 1848, under the provisions of the law of 1802, ch. 111, and being so in conflict with the charter, this custom is void, and cannot in any manner control or affect the election of elders.

The charter provides, that "no person shall be eligible either as elder or deacon, unless at the time of his election he be a member of this church in full communion, and above the age of twenty-one years." *Sec.* 5

It also provides, that "no member shall be entitled to vote for pastor, elders or deacons, or on any matter touching the doctrine or discipline of the church, unless he be a male member over twenty-one years, in full communion with this church, and who annually contributes according to their ability to its support." *Sec.* 10.

These two sections designate the qualifications of elders and deacons, and of those who are entitled to vote for them; and it is argued that the right is thereby conferred on the qualified elector to vote for any one as elder, pos-

sessing the qualifications mentioned, without regard to any usage or custom in reference to the manner in which nominations and announcements of candidates are to be made.

It cannot be questioned, that a by-law, or a custom having the force and effect only of a by-law, if found to be in opposition to the charter of the corporation, will be declared and held to be void. *Lee vs. Wallis,* 1 *Ld. Kenyon,* 292; *Rex vs. Spencer,* 3 *Burr.,* 1834; *Rex vs. Cushwood,* 4 *Burr.,* 2204. But is the custom set up in this case repugnant to the sections quoted from the charter of this corporation? In *Stephens's N. P.,* 2297, *(mar.,)* referring to *Rex vs. Sligo,* 2 *Fox and Smith,* 96, it is said, "if in a charter of incorporation respecting the admission of members, the charter will admit of a *construction consistent with the uniform usage* in opposition to the claim, a mandamus will not be granted." The custom of the consistory in this case, in nominating persons to be voted for as elders is easily and readily reconciled with the provisions of this charter. There is no such inconsistency between the charter and this custom, as to place their reasonable construction outside of the doctrine just referred to. They may both well stand together, and both be truthfully and honestly carried out. The charter does not affirm that all persons, possessing the qualifications mentioned in the fifth section may be voted for. Its terms are negative, directing that "no person shall be eligible either as elder or deacon, &c."

The custom of nominating by the consistory, existed before and at the time of the adoption of the charter in 1848, and it may well be regarded as explanatory of the meaning given by the corporators themselves, to the section referred to at the time of its adoption. The power to nominate candidates may be in the consistory, and yet effect given to this section of the charter. They may nominate, but the persons nominated by them must be members of the church in full communion, and above the

age of twenty-one years. By this construction, all appa-
rent conflict and inconsistency is avoided, and efficacy is
given to the terms of the charter, and the long established
usage and custom of this congregation of the Reformed
Church, respected and preserved.

The cases referred to and relied upon by the appellant
in 3 *and* 4 *Burrows, and* 1 *Ld. Kenyon,* (*cited above,*) are
readily distinguished from this case. In each of them the
by-law, which formed the subject of dispute, was in direct
conflict with the charter, and could not, by any reasonable
construction, have been reconciled with its provisions. In
the cases in Burrows the right to elect certain officers was
conferred by the charter upon the Mayor and others *and*
*commonalty*. By-laws were passed taking away the power
of *the commonalty* to participate in the election, and these
by-laws were held to be invalid because repugnant to the
charter. In the case of 1 *Lord Kenyon,* 292, by the terms
of the charter, the warden of the corporation was to be
elected yearly " out of the principal inhabitants of the
town." A by-law was made, " directing eight assistants
to the warden to be chosen and nominated out of such of
the inhabitants as had served in the office of bailiff or
tything man, within the said borough, to be nominated
by the warden and to continue for life ; and that the warden
should be annually chosen out of the said eight assistants."
This was also held to be repugnant to the charter, because
" the description of the body, out of which the warden is
to be elected, cannot be altered, which was solemnly deter-
mined in the case of the borough of *Carmarthen,* between
the *King & Phillips,* 23 *G.,* 2, where the charter directed
the election out of the *burgesses,* and the by-law out of the
*common council.*" An examination of these cases shows
that they differ from the one before us. In them there is
a clear conflict between the charter and by-law, which
cannot be reconciled by any reasonable construction, while
in the case before us the two can readily stand together,
and efficiency be given to both.

Nor does it appear from anything in this record that the custom and usage relied upon by the appellees is not a salutary and wholesome one. The office of elder in this church is one of a high spiritual nature. *Creed & Customs by Russell*, 449. Those who fill it must be "in full communion," and "exemplary in faith and practice." *Charter, sec.* 5. *Constitution of Church, Art.* 21. To them, together with the ministers and counsellors, are committed the spiritual concerns and government of the congregation. *Constitution of Church, Art.* 40. They are inducted into office by the imposition of hands and a solemn and imposing religious ceremony. *Constitution of Church, Art.* 22. *Order of worship, p.* 231. The office is therefore one of the highest importance, and a long continued custom, tending to aid in the selection of suitable members of the congregation to fill it, cannot be regarded with disfavor by the Courts. Those who compose the consistory are specially charged by virtue of their office to inquire diligently into the faith and practice of members of the congregation, (*Constitution of Church, Art.* 40,) and to them may well be confided the power to designate by nomination, candidates possessing the qualifications required by the charter and constitution of the church. The announcement of such candidates from the pulpit gives an opportunity to the congregation of knowing with certainty who are candidates, and of canvassing their respective qualifications. It cannot be expected that the Courts will hold such a custom and usage to be bad, because it may be abused, and upon that ground declare it to be inapplicable and void.

In our opinion the first and second reasons, assigned by the appellees in their answer against granting the writ of mandamus in this case, are good and sufficient. The custom and usage there set up is binding upon the congregation, and must be observed at the annual election of elders so long as it remains unrepealed and unaltered. As it

was disregarded in the case of the appellant we must hold that he was not duly elected to the office of elder; and as a consequence, his petition for a mandamus must be dismissed.

The judgment refusing the mandamus and dismissing the petition will be affirmed.

*Judgment affirmed.*

(Decided 10th June, 1875.)