# CIRCUIT COURT NO. 2 OF BALTIMORE CITY

Filed February 10, 1892.

## ALACACUS HOOPER

### VS.

## THEODORE HOOPER, ET AL.

*Thomas Ireland Elliott* and *Charles Marshall* for complainant.

*John P. Poe, Frank Gosnell* and *Thomas M. Lanahan* for defendants.

PHELPS, J.—

This is an injunction suit by a stockholder to restrain the conduct of the business of the Woodberry Manufacturing Company in any other than its own name, and the deposit of its funds in any other name, or under the control of persons other than its duly constituted officers. The persons referred to are the members of the firm of Wm. E. Hooper & Sons. This firm has been the banker of the company from its formation. It has also been the purchasing agent of the company, factor, endorser and commission merchant. Some changes have occurred from time to time of an incidental character, as to the nature and amount of compensation, and as to guaranteeing sales, but in the essential matter there has been no change. Through all these minor variations, the firm has continued to be the banker of the corporation. As a matter of fact, the corporation never had a separate bank account in its own name until after this present difficulty commenced, and as one of its culminating incidents.

No express provision of the charter or by-laws prohibits this practice. Several sections of the by-laws are referred to from which such a prohibition is sought to be implied. The office of treasurer is created. He is required to give bond. He, together with the president is to sign checks. This is all. On the other hand, both charter and by-laws confer upon the board of directors the broadest powers for the transaction of the company's business

and the selection of its agencies. The charter says, "subject to such restrainst and qualification as may be prescribed by the by-laws or other votes of the stockholders in general meeting." The by-laws say, "general control and management of the business of the company"; appointment of such officers and servants for the transaction of the business of the company as the directors "may deem necessary," and the assignment of the "duties" to be performed by them.

The by-laws do not require the deposit of the corporate funds exclusively in the name of the company. The treasurer is not given exclusive charge or custody of the funds of the corporation. In the section of the by-laws defining his duties, the things he is to have the custody of are particularly enumerated. He is to keep accounts and books, but nothing is said about monies or funds.

In this respect these by-laws are peculiar and exceptional.

See Pearson vs. Town, 53 N. H. 36 and 215.

This omission was not by inadvertence. It is accounted for by the existence of the usage already referred to as existing at the time of the organization of the company and continued since. The treasurer was not given exclusive custody of the corporate funds, because the company had a fiscal agency which it used for that purpose.

The question is one of construction of the by-laws. By-laws are contracts between the members of a corporation. They are governed by the same principles of interpretation applicable to other contracts.

In re Dunkerson, 4 Biss. 227.

State vs. Conklin, 34 Wisc. 21, 30.

In the construction of all contracts courts "look to the language employed, the subject-matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and in that view, they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so as to judge of the meaning of words and of the correct application of the language of the things described."

Nash vs. Towne, 5 Wall 689.

Cited 65 Md. 216.

Applying this approved rule of interpretation to the controverted question of the true construction of these by-laws, there is certainly nothing to be found in the actual situation before they were made, at the time they were under consideration from April to August, 1886, by the committee on by-laws, of which the plaintiff was a member, and at the time they were reported and unanimously adopted on the 19th of August, 1886, to warrant the court in attempting to read into the ninth section the significantly omitted word "funds" or "monies" in connection with the words "accounts and books," to construe the word "checks" as used in the seventh section in a sense different from that in which the other words "bonds," "notes" and "drafts," found in the same connection are obviously used, and to abridge the comprehensive grant of power conferred upon the board of directors by the fifth section as to the internal management of the company in such wise as to prohibit as *ultra vires* a method of business at that time established and uninterruptedly continued.

Quite to the contrary, we find in the actually existing state of things with reference to which these by-laws were made, an adequate and satisfactory explanation for the omission to confer upon the treasurer a custody which the by-laws of corporations generally expressly vest in officers of that name, and also an explanation of the extensive powers vested in the board as to all matters and agencies relating to the management of the corporate business.

In Hammond vs. Strauss, the fact of the use and exercise of privileges and powers which could only be referred to the act of incorporation, and which would have been wholly unauthorized and illegal if not derived from that act, was held sufficient to justify the presumption that the act of incorporation had been accepted, in the face of sworn testimony to the contrary; 52 Md. 12, 13. So in this case, where the question is in like manner a question of intent on the part of incorporators, the use at the time the by-laws were enacted and the continued use thereafter of powers that would be clearly illegal if the construction contended for by the plaintiff were the true construction of the by-laws, is sufficient to justify the presumption

that no such construction was contemplated by the incorporators' who framed those by-laws.

By-laws should be construed liberally and in accordance with the construction placed upon them by the company itself.

1 Mov. Corp., Sec. 497.

State vs. Conklin, 34 Wisc. 21.

And this rule is especially in point where the controversy is exclusively between corporators, and where the objecting corporator is himself committed to the construction objected to.

A long continued, unbroken and unopposed custom and usage is in the nature of a by-law, and if not inconsistent with the charter is equally binding.

Miller vs. ———, 43 Md. 6.

"Long continued" is a relative term, its definition depends upon the subject-matter, and its scope will vary with circumstances. The usage now in question may well be called a long continued as well as a uniform usage, since it prevailed without break or opposition during the entire life time of this corporation, down to an advanced stage of the difficulty which led to this suit. The plaintiff is on record as distinctly recognizing its existence and voting for its continuance as late as 1st May, 1890, and 2d March, 1891. (Minutes of these dates.)

This bill was filed 22d July, 1891. No other reference need be made to the unfortunate family quarrel which brought on this litigation, than to say that in its origin it had no relation to the question of the deposit of the corporate funds.

The gravamen of the bill is that under the system complained of the corporate fund is in jeopardy because it is liable to be drawn out upon the check of one member of the firm of Wm. E. Hooper & Sons, signing the firm's name instead of upon a check signed by two official persons, the president and treasurer of the Woodberry Manufacturing Company. It is charged that opportunity is thus afforded for the misapplication of the corporate funds to other than corporate uses, and that in fact this opportunity has been availed of, and that the defendant, Theodore Hooper, has largely overdrawn his account, and used the money for his private purposes.

Upon this issue a great deal of testimony has been taken an a great deal of argument had.

The result of it all is that the question is found to resolve itself into a mere question of bookkeeping. Taking all the connected accounts together, it is made perfectly apparent that the defendant, Theodore Hooper, has drawn no more than his share of the legitimate and conceded ·profits. Counsel for plaintiff, while still insisting upon their theory of accounting, very frankly disclaimed in argument any imputation upon his integrity.

The failure of this charge deprives the bill of all substantial foundation. What is left is a mere theoretical grievance, and even as such will not bear investigation. It has already been seen that the usage complained of is not prohibited, but sanctioned, by the by-laws, even if it be not in fact such a usage as is equivalent to a by-law. It is contended that the funds of the corporation are trust funds, that the directors are fiduciaries, and that the mingling of trust funds with other monies is a breach of trust which the court will prevent by injunction.

It is not at all necessary to controvert the soundness of that proposition as applied to corporations in general. It is only necessary to repeat that the by-laws of the Woodberry Manufacturing Company are peculiar; that the established relations between it and the firm of Wm. E. Hooper & Sons account for that peculiarity; that the depositing of the company's funds with the firm is a settled usage as old as the company itself; that the by-laws were framed with reference to that usage and with powers in the board of directors broad enough to warrant it, and that, consequently, such action by the directors is not a breach of trust, nor *ultra vires*, nor a legitimate ground of complaint upon the part of any stockholder.

To say that this is a dangerous power and liable to abuse is of itself not enough to justify the court in breaking up an arrangement that the parties interested and competent have made to suit their own convenience. This is not a case where a minority stockholder find a majority combined against him with a separate interest as regards the corporate fund, adverse to his own. There is no charge and no proof of a conspiracy to defraud, or by force of numbers to take undue advantage. The stockholders have all a common interest with the plaintiff in the safety of their common funds. Whenever a majority of the stockholders become satisfied, either from changes in the firm or otherwise, that the method of business heretofore pursued is inexpedient or unsafe, it will be in their power to change it by their own action. The abrupt withdrawal of the plaintiff from the firm was his own voluntary act, and could not change the by-laws nor alter their construction.

The object of this suit is to obtain the court's interference in the internal management of a solvent and going concern, in the full tide of success and prosperity.

As to the general honesty, prudence and efficiency of its management, results speak for themselves. Its net profits have averaged about $100,000 a year, and there now stands to its credit a surplus for distribution of $110,000. There has been no fraud, no misconduct, no loss, no waste, no imminent danger, no injury to the plaintiff or to any other stockholders. There has been nothing more serious than a falling out between brothers, one of the results sometimes of too much prosperity. Nothing has been done in violation of the charter or by-laws; the case is not a proper one for an injunction, and the bill must therefore be dismissed.