MARY P. JENKINS, ET AL. *v.* NEW SHILOH BAPTIST CHURCH OF BALTIMORE, MD., ET AL.

[No. 58, October Term, 1947.]

*Decided January 15, 1948.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*J. Morfit Mullen,* with whom were *Aaron & Aaron* and *Arthur R. Padgett* on the brief, for the appellants.

*Marshall A. Levin,* with whom was *Harry O. Levin* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Mary P. Jenkins *et al.* from the dismissal in the Superior Court of Baltimore City of a petition for mandamus, and judgment in favor of the defendants, appellees here, for costs of suit.

The New Shiloh Baptist Church is a Baptist congregation incorporated under the Maryland General Corporation Laws, 1939 Code, Article 23, Sections 275 to 285, originally the Act of 1802, Chapter 111.

The petition for mandamus alleges in part as follows: that the petitioners were members in good standing "morally and financially" of the New Shiloh Baptist Church of Baltimore City, a corporation duly incorporated under the laws of the State of Maryland, a defendant and appellee here. The defendant and appellee, J. Timothy Boddie is the pastor of that church. On or about June 18, 1946, Rev. Boddie sent a notice to the members of the church calling a meeting of the membership for June 21, 1946. At that meeting a motion was made to expel the appellants as members of the church. So much confusion existed when the motion was put that the secretary of the meeting was not sure that it had passed until she consulted the Moderator, Rev. Willis J. Winston, the same night. The pastor has dropped the appellants from the membership roll of the church. The petition further alleges that the attempted expulsion of the petitioners was illegal and without warrant in law for the following reasons:

The appellants are in good standing "morally and financially". Many of the persons present who voted at the meeting were not members of the church and not in good standing in accordance with its Constitution. The notice of the meeting contained no reference to the fact that the petitioners were to go on trial for expulsion from the church, contrary to the Constitution thereof. Article XI of the Constitution provides that a member may be dismissed "by expulsion", and Article XII of the Constitution, Paragraph B, provides: "No case of discipline shall come before the church or any matters per-

taining to the office of Deacons before it has been considered by the Deacons and Pastor." The case of the appellants was never considered by the Deacons and Pastor. Under the Constitution and By-Laws of the church the petitioners are not liable for expulsion. Their only offense was to disagree with the pastor when he did not in their estimation abide by the Constitution and By-Laws of the church. The appellants believe and aver that the pastor desired to get rid of the appellants so that he could run the church to suit himself, although the appellants have contributed a considerable amount of their time and money toward the welfare and up-building of said church, which is now financially independent. The appellants have demanded to be re-instated as members but the appellees have refused to re-instate them although they have been wrongfully expelled from said membership. The petition prays that a writ of mandamus be issued, directing the defendants to enroll the appellants on the books of the church as members in good standing, in accordance with the Constitution and By-Laws of said church.

An answer was filed by the defendants in which they denied the material allegations of the petition, and alleged that a majority of the church membership had the right to pass the motion to expel the defendants on any ground found justifiable, and the said resolution to expel the appellants was passed by a majority of the church members. They admit that the notice of the meeting made no reference to the fact that appellants were to go on trial for any offense. After the taking of testimony before the trial judge, the mandamus was dismissed and judgment entered in favor of the appellees for costs of suit. From that judgment the appellants appeal.

The testimony shows that the appellants, being 23 members of the New Shiloh Baptist Church (The Church) in good standing, together with four other members of that church on June 17, 1946, wrote and signed the following letter to Rev. Boddie:

"We the undersigned, do hereby charge you with being biased and discriminating against certain members of, the church, dealing unfair and rendering unjust decisions in our business meetings, putting motions before the body for some members and refusing to do the same for other members.

"We furthermore charge you with failure to explain how you obtained a $125.00 last August and refusing to have someone else to explain the same to the church, and also you have refused to let it come up for discussion in any business meeting since.

"We furthermore charge you with calling or having someone to call, or having the knowledge of them being called, two patrolmen and a policewoman to our business meeting for one purpose to intimidate certain members to keep them from talking.

"We furthermore charge you with permitting Mrs. Violet Whyte to come into and sit beside you in the pulpit throughout the remainder of our business meeting and also permitted her to interfere with and call members down while they were on the floor speaking, knowing her to be a non-member of the Shiloh Baptist Church, and not of the Baptist faith, which is contrary to the Constitution of the Shiloh Baptist Church.

"We further charge you with malfeasance in office.

"We furthermore charge you with splitting the congregation into two groups to the extent that one group is ready to clutch at the other's throat at the least provocation, and with tearing apart in three years; what it took Rev. W. W. Allen forty years to build.

"We expect you to answer these charges at the next regular business church meeting."

Three of the members who wrote this letter approached Rev. Boddie on his way to attend a meeting of the Deacons and tried to hand him the letter, which he refused to take and told them to follow him into the church. They followed him into the Board meeting of the Deacons where they handed him the envelope containing the above letter. The three men made no statement to the Deacons

and left the room. It is admitted by the defendants that no thought was given as to any disciplinary action against the appellants at the meeting of the Deacons, or at any time until after the charges against the pastor were dismissed by a vote of the congregation. Rev. Boddie on June 18, 1946, wrote a letter to the members of the congregation, which letter follows:

"On Monday evening, June 17th at our regular board meeting three men, namely Messrs. William Bryant, George Hailey and Luke Doles presented to the Pastor and to the board of Deacons through its chairman, Mr. John Forrest, the enclosed contents.

(Letter above quoted)

(Signature of Appellants)

"For nearly twelve months these persons and others in the church have used every unchristian, unbaptistic, unethical and unfair method to poison the membership through lies, slander and malicious propaganda to disturb the peace and quietude of the church, to destroy my reputation and character, humiliate and wreck my family, to ruin my future and to keep the church constantly in a state of uproar and unrest.

"Now the time has come in which this matter must come to a head. Something must be done, somebody must go. May God direct you to use your influence and voice for truth and right. Things must be proved by facts and not by feeling, gossip or hear-say.

"Please make the sacrifice in God's name, in the interest of the church and my future Ministry to be on hand at the church, this Friday evening, June 21st at 8:00 o'clock.

"Yours for Christian Service,"

(Signature of Pastor.)

At the meeting on June 21, 1946, approximately 800 members, of a total membership of between 1900 and 2000, were present. After debating the matter for several hours, the Pastor was sustained by a vote of 348 to 130. After this vote was taken Sister Mary Askew made

a motion that "the right hand of fellowship be withdrawn from the twenty-seven members whose names were signed to the charges." Much confusion reigned after this motion was made. The petitioners claim that the secretary of the meeting was not sure the motion had passed until she consulted the Moderator of the meeting, that same night. The effect of this motion was to expel the appellants from membership in the church.

As set out in the petition for mandamus, Article XII, Paragraph B, provides that "no case of discipline shall come before the church * * * before it has been considered by the Deacons and Pastor." As it is admitted that the disciplinary action against the appellants was never taken before the Deacons as required by the Constitution of the church, we must assume that the expulsion of the appellants was irregular. We, therefore, are faced with the question as to whether the writ of mandamus should be issued where the expulsion of the appellants was irregular and not in accordance with the Constitution and By-Laws of the church.

In the case of *Jackson v. Hopkins,* 113 Md. 557, 78 A. 4, a petition was filed by a vestryman of a certain Protestant Episcopal Church praying for a mandamus against the registrar of the church, compelling him to allow the petitioner to inspect the church records. In affirming an order refusing the mandamus this Court said at pages 563 and 564 of 113 Md., at page 6 of 78 A.: "* * * if there is one class of cases which, more than all others, ought not to be encouraged, it is of those involving controversies in churches. Men will and do differ in their religious beliefs and creeds, and those of the same faith often disagree as to what is best or desirable for their own denomination, or the particular congregation with which they are connected. They are entitled to the protection and benefit of the laws of the land, in so far as their rights are involved in the temporal affairs of the church; but it cannot be doubted that when even such temporal affairs are brought into court the church whose members are thus involved is likely to be more or less

injured. Church controversies, like family quarrels, are often bitter, and those not actively engaged in them sometimes suffer as well as the active participants. If there is one place on earth above all others where peace ought to reign, it is in the church of God, and, whatever our religious belief may be, all persons interested in the elevation of mankind, whether they be Jews or Gentiles, Roman Catholics or Protestants, should deplore any controversy that may tend to weaken or injure a congregation of any creed organized for religious purposes. It behooves courts of justice, therefore, not to do more than the law requires if action by them may tend to widen existing breaches."

In the case of *Shaeffer v. Klee*, 100 Md. 264, 59 A. 850, a bill for injunction was filed to restrain the trustees from permitting the church services to be held in a language other than German, and to compel the trustees to forbid and prevent ministers who do not accept the Symbolical Books of 1580, as of binding force and absolute rule of faith, but acknowledge the Augsburg Confession only, from preaching and conducting services in the Deer Park Church. A demurrer to the bill of complaint was sustained. This Court in affirming the sustaining of the demurrer said at pages 269 and 270 of 100 Md., at page 851 of 59 A., in reference to the then Code, Article 23, Sections 205 and 206 (now 1939 Code, Article 23, Sections 275 and 276) : "But those sections do not authorize the incorporation of the members of the congregation or of the congregation itself. * * * The statute does not authorize the incorporation of 'congregations,' but certain persons belonging to and selected by the congregation, and these are constituted the body politic on behalf of the particular church. There is nothing in the act granting to the members of the congregation the power to act as members of the corporation. The act included in the article 23, sec. 205 *et seq.*, is an amendment of the act of 1802, c. 111, and in construing that this court said, 'The male members of the church are invested with no visitatorial power over

ministers or trustees, *or interest in the property of the corporation.'* In the act of 1802 there was a provision which expressly declared that nothing contained therein should be taken to affect or alter the religious constitution or government of any church, so far as respects or in anywise concerns 'doctrine, *discipline* or worship.' The sections in the Code do not include this provision, but the powers granted to the trustees are carefully set forth, and apply only to the management of the property, and no authority is given to exercise any authority over matters of doctrine or *discipline*. It seems, therefore, to be clear that the purpose of incorporations like the one in this case, was to enable the church to attend more readily and efficiently to their temporal affairs, without any power or authority to interfere with forms of worship, articles of faith, or any other matter, relating strictly to spiritual concerns. *Tartar v. Gibbs*, 24 Md. [323] 334; *Stubbs v. Vestry*, 96 Md. 267, 53 A. 917. * * * As to those matters which involve only spiritual affairs, it seems to be well settled that this court has no power to interfere. *Tartar v. Gibbs, supra*. These must be left with the authorities of the church or denomination, who have the power, by the custom and usages of the ecclesiastical organization, to consider and determine upon them." (Italics supplied here.) The Act of 1802, Chapter 111, of course, has now been amended whereby members are not limited to the male sex as in the original Act. Code 1939, Article 23, Section 275.

· This case of *Shaeffer v. Klee, supra*, cites with approval the Supreme Court case of *Watson v. Jones*, 13 Wall. 679, 20 L. Ed. 666. In that case it is said at page 730 of 13 Wall.: "We have already cited the case of *Shannon v. Frost*, [3 B. Mon., Ky., 253] in which the appellate court of the State where this controversy originated, sustains the proposition clearly and fully, 'This court,' says the Chief Justice, 'having no ecclesiastical jurisdictions, cannot revise or question ordinary acts of church discipline. Our only judicial power in the case arises from the conflicting claims of the parties to the church property

and the use of it. We cannot decide who ought to be members of the church, nor whether the excommunicated have been justly or unjustly, regularly or irregularly cut off from the body of the church.' "

In *Miller v. Eschbach*, 43 Md. 1, the Court passed upon the legality of the election of one of the elders of the Evangelical Reformed Church of Frederick. However, this Court pointed out in that case that to the office of elder, together with the minister and counsellors, are not only committed the spiritual concerns but also the government of the congregation.

In *Weber v. Zimmerman*, 22 Md. 156, and *Id.*, 23 Md. 45; *Stubbs v. Vestry*, 96 Md. 267, 274, 53 A. 917; and *Bartlett v. Hipkins*, 76 Md. 5, 23 A. 1089, 24 A. 532, this Court passed upon the question as to whether the minister was legally expelled from his office. A minister, however, is employed under a contract and is paid a salary. Questions concerning the removal of a rector involve contractual and property rights and are not concerned alone with "doctrine, discipline or worship". As was said in *Bartlett v. Hipkins, supra*, 76 Md. at page 27, 24 A. at page 532: "There is no question here of faith, spiritual discipline, or mere rule of ecclesiastical government, apart from relations created by contract and the property rights of the parish. The principal matter of this suit depends upon the contractual relations existing between the vestry and the rector, construed with reference to statutory provisions of the state; and such being the case, it is quite true, as said by the supreme court of the United States in *Watson v. Jones*, 13 Wall. 679, 714 [20 L. Ed. 666], that religious organizations come before the courts of the country in the same attitude as other voluntary associations for benevolent or charitable purposes, and their rights of property, or of contract are equally under the protection of the law, and the actions of their members subject to its restraints. It is in respect to these rights, and no other, that this case is brought into this court by the appellants."

522

In the case of *Brayshaw v. Ridout*, 79 Md. 454, 29 A. 515, this Court reversed the lower court and granted a mandamus to compel the registrar of a Protestant Episcopal Church to register Brayshaw as a member of the church. However, the demurrer in that case admitted that he was a member, and this Court held that the registering of Brayshaw would not involve the exercise of judgment or discretion, that it was a plain ministerial duty for a failure to perform which a mandamus will lie. The Court further said in that case: "We will say, however, because we are informed that other cases may depend upon our view of the matter, that, in our opinion, membership in a church is an ecclesiastical matter, depending upon the law of the church itself."

In the instant case the appellants in their petition for mandamus admit that their expulsion was a case of discipline. This Court, as set out in *Tartar v. Gibbs, supra,* and *Shaeffer v. Klee, supra,* has refused to pass upon questions of discipline where no property interest is involved, and as clearly stated in those two cases, the members of a church incorporated under the Act of 1802, Ch. 111 and as amended, as the church in the instant case is incorporated, have no interest in the property of the corporation. As stated in *Brayshaw v. Ridout, supra,* membership in a church is an ecclesiastical matter. Therefore, following the principle definitely stated in the case of *Jackson v. Hopkins, supra,* that courts of justice should not do more than the law requires in church controversies, if action by the courts would widen existing breaches, we agree with the trial judge that the petition for mandamus should have been refused. To reinstate these twenty-three appellants as members of the New Shiloh Baptist Church would not tend to heal the existing breach and would no doubt lead to discord "where peace ought to reign." [113 Md. 557, 78 A. 6.]

In Hiscox—"The New Directory for Baptist Churches", it is stated at page 188: " Note 4. Anyone tried by a Church should be allowed every opportunity, both as to time, place and circumstance, to vindicate himself. The

very justice of Christ's house should incline to mercy. It should be made manifest that the object is not to punish, but to reclaim." Apparently, a majority of the members of New Shiloh Baptist Church have not seen fit to observe this church rule. However, being a matter of discipline, for the reasons herein given, that is not a matter for the courts to decide. No doubt the appellants will be welcomed to membership in some other congregation where the "extension of the hand of fellowship" is not subject to personal grievances.

*Judgment affirmed, with costs.*