EVANS ET AL. *v.* SHILOH BAPTIST CHURCH ET AL.

[No. 48, October Term, 1950.]

544

*Decided December 8, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Dallas F. Nicholas* and *U. Theodore Hayes*, with whom were *Nicholas & Gosnell* on the brief, for the appellants.

Submitted on brief by *Harry O. Levin* and *Marshall A. Levin* for the appellees.

MARKELL, J., delivered the opinion of the Court.

This is an appeal by the plaintiffs from an order sustaining a demurrer to the bill, with leave to two plaintiffs, Evans and Coleman, to file an amended bill within fifteen days, and dismissing the bill as to the other plaintiffs. Evans and Coleman did not file an amended bill.

The bill alleges that: In August, 1948 all the plaintiffs were "members in good financial standing" in defendant church. Plaintiff Evans then had served for several years as assistant pastor, and plaintiff Coleman had served as secretary of the trustee board, of defendant church. The other plaintiffs have held various offices in the church and its member organizations. Defendant church was incorporated under the general religious incorporation law. Code, Art. 23, secs. 275-284; Acts of 1802, ch. 111; *Jenkins v. New Shiloh Baptist Church,* 189 Md. 512, 514, 56 A. 2d 788. Defendant Boddie is pastor, the other defendants respectively chairman and secretary of the board of deacons and members of the trustee board of the church. On August 21, 1948 plaintiff Evans was notified by defendants pastor, chairman and secretary, "purporting to act on behalf of the church", that he was "released" as assistant pastor, the release to be effective at the end of August, 1948. These defendants had taken this action without a church meeting. Plaintiff Evans "had been regularly elected as assistant pastor by a majority of the church membership at a duly organized church meeting, for a period of time agreeable to a majority of the church membership." Various matters have arisen between plaintiffs and other members of the church, on the one hand, and the pastor and the other defendants. On October 14, 1948 thirty-three members of the church, including four plaintiffs, addressed to the "pastor, deacons and trustees" of the church a written request that "because the church harmony has been so greatly threatened" they call "a regular church meeting" to "discuss some of the things that is destroying our church harmony." This request was not complied with. Defendant's pastor, chairman and secretary "summoned" each of the plaintiffs to appear before the board of deacons of the church on December 8, 1948, and "show cause why disciplinary action should not be taken" against plaintiffs, for (in the case of Evans) (1) "disturbing the peace of the worship service on Sunday morning, October 17, 1948, in full view of

members and friends assembled by making an unofficial unauthorized statement, causing a disruption in the service" and (2) "being an important part of a factional meeting on Tuesday evening October 21, [*sic*] 1948, and making statements to disturb the peace and harmony of the church." The letter to Evans quoted the constitution of defendant church, section 2, paragraph 3, "leaders of factions and disturbers of peace and tranquility of the church membership shall be brought before the board of deacons and be disposed of in the best way possible for the good of the church." Plaintiffs did not appear on December 8, 1948. On December 9, 1948 the three defendants wrote them again, requesting them to appear on February 2, 1949 for the same reasons, and saying, "We further decided that until you have met the board as requested above, you are not to be active in the affairs of the church, groups, organizations, or represent the church outside in any way." "Because * * * plaintiffs did not so appear before [the] board of deacons, they * * * each * * * were notified by [those] defendants that they, plaintiffs, were 'under discipline' ". [This allegation apparently refers to the letter of December 9, 1948, *supra,* an exhibit.] There has been no regular church meeting of defendant church for months. Plaintiffs, together with other members of the church, have been trying "to ascertain", among other things, "why and when the pastor's salary was raised, why plaintiff Evans was discharged, what was the cost of renovation of the church and when and how the work was paid for, a report as to the [Jenkins?] litigation, and why plaintiffs must remain 'under discipline' ", without a trial under church law. As a result of these difficulties, "and being unable to obtain any further redress in defendant church", plaintiffs "requested the several Baptist churches of Baltimore * * * to meet in council on January 31, 1949", so that plaintiffs "might be afforded a hearing and advise [*sic*]." The "said council met and heard plaintiff's complaints and pursuant thereto, * * * rendered a decision recommend-

ing that plaintiffs and * * * defendants meet and settle their differences." This "decision" is entitled "the advise [*sic*] of ex parte council called by aggrieved members of Shiloh Baptist Church * * *." A copy of this "decision" was delivered to defendants, but "in spite of the decision, and contrary to the spirit thereof, * * * defendant Boddie called a report meeting of defendant church on March 17, 1949, from which meeting plaintiffs were excluded and in this * * * meeting * * * defendant Boddie caused * * * plaintiffs to be removed from their several positions in the church and continued to keep them 'under discipline' ". Plaintiff Evans has not received any salary since September 1, 1948, and plaintiff Coleman's salary has been suspended since November, 1948.

Plaintiffs aver "that they are suffering great and irreparable harm and * * * unless this court intervenes, greater harm and injury will result not only to * * * plaintiffs, but to many other members of defendant church itself." Plaintiffs pray that (*a*) plaintiff Evans be restored to his position as assistant pastor and "be paid his full salary * * * from September 1, 1948", (*b*) plaintiff Coleman be restored to his position of secretary of the trustee board and "be paid his full salary * * * from November 1, 1948", (*c*) plaintiffs "be removed from the status of 'under discipline' " and "be restored to full and complete alphabetical and numerical membership" in defendant church, (*d*) a "regularly constituted meeting of the entire membership" of defendant church "be held, at which time the pastor * * * and the board of deacons and the trustee board of * * * defendant church give and make a full and complete report and accounting to the membership and that * * * plaintiffs * * * each * * * be permitted to attend and participate in such meeting," and (*e*) general relief.

As we take judicial notice of our own records, we know that unless the membership of defendant church has diminished in the two years after June, 1946, thirty-three members constitute less than two per cent of the total membership. *Jenkins v. Shiloh Baptist Church,*

*supra,* 189 Md. 517, 56 A. 2d 788. There is no showing that any provision of the constitution and by-laws of defendant church empowers church members to call a meeting of the congregation to ventilate complaints, or exact from the pastor and trustees a full report and accounting of the affairs of the church, or for any other purpose. Nor is there any such statutory provision, unless section 284 of Article 23, which provides that a church's record book of proceedings "shall be laid before a public meeting when required by any five or more of the members", means that five church members may not only require that the book be laid before any duly called meeting of the members, but may also require that a meeting be called for that purpose. Section 284 provides, "Every such corporation may appoint the times and places of the meeting of its members * * *." The only meeting of church members which seems to be required by statute is a meeting to "keep up the succession", *i.e.,* elect trustees. Art. 23, sec. 277. This court has long held that the trustees or vestrymen, and not the members of the congregation, constitute the corporation. *Stubbs v. Vestry of St. John's Church,* 96 Md. 267, 275-276, 53 A. 917; *Tartar v. Gibbs,* 24 Md. 323; *Shaeffer v. Klee,* 100 Md. 264, 269-270, 59 A. 850. Except the power— and duty—to "keep up the succession", in accordance with the "known custom and usage" of the denomination or the charter and by-laws of the church, the congregation have only such powers, if any, in the management of the affairs of the corporation as may be conferred upon them by the charter and by-laws. *Stubbs v. Vestry of St. John's Church, supra.* We need not decide the question above suggested as to the construction of Art. 23, sec. 284. Plaintiffs have asked, and now ask, a meeting of the congregation, not for the purpose of having the record book laid before the meeting, but for other and different purposes. Although the duty to "keep up the succession" is imposed by statute, even the election of trustees or vestrymen, members of the body corporate, is governed by the "known custom and usage" of the

denomination and by the charter and by-laws of the particular church. *Weber v. Zimmerman,* 22 Md. 156; *Miller v. Eschbach,* 43 Md. 1.

Nothing in the bill indicates any right, by statute or by charter and by-laws, of plaintiffs to appeal to the *"ex parte* council" or any obligation of defendants to obey the "decision" of that "council". Art. 23, sec. 279, provides, in case of an election contest, for choice of three persons from other congregations, whose judgment or award shall be final.

In *Jenkins v. New Shiloh Baptist Church, supra,* 189 Md. 518, 56 A. 2d 791, we said, "As set out in the petition for *mandamus,* Article XII, Paragraph B, provides that 'no case of discipline shall come before the church * * * before it has been considered by the Deacons and Pastor.' As it is admitted that the disciplinary action against the appellants was never taken before the Deacons as required by the Constitution of the Church, we must assume that the expulsion of the appellants was irregular. We, therefore, are faced with the question as to whether the writ of *mandamus* should be issued where the expulsion of the appellants was irregular and not in accordance with the Constitution and By-Laws of the church." This provision of Article XII B is in an exhibit in the instant case. Plaintiffs, charged with disturbing the peace at public worship and other offense, refused to attend the meeting of the board of deacons when requested to do so. It is by no means clear that upon their refusal to attend, the board of deacons was without power to suspend their church activities or membership or put or keep them "under discipline". It does not appear just what the status of being "under discipline" is. However, in view of our opinion in the recent case of *Jenkins v. New Shiloh Baptist Church, supra,* and the full review of prior cases in that opinion, we need not further pursue the question whether the bill alleges any violation of the church's charter and by-laws either in the suspension or removal of plaintiffs or in exclusion of them from the meeting at which they were removed. In the *Jenkins*

case we held that, assuming the expulsion of the appellants to be unlawful, "their expulsion was a case of discipline", 189 Md. 522, 56 A. 2d 793, which the courts would not pass upon, where no property interest is involved. As we held that no property interest was involved in expulsion from membership, manifestly no property interest is involved in suspension or other similar discipline short of expulsion. Long before the *Jenkins* case it had been held that membership is an ecclesiastical matter, as to which the courts will not review the action of the ecclesiastical authorities. *Watson v. Jones,* 13 Wall. 679, 730, 20 L. Ed. 666; *Brayshaw v. Ridout,* 79 Md. 454, 456-457, 29 A. 515. With the possible exception of the removal of Evans and Coleman from office, everything of which plaintiffs complain in the instant case is a matter of ecclesiastical discipline, which the courts will not review.

Defendants have moved to dismiss the appeal of Evans and Coleman on the ground that an order sustaining a demurrer to the bill, with leave to amend, is not appealable. This motion must be granted. *Maas v. Maas,* 165 Md. 342, 346, 168 A. 607; *Diedel v. Diedel,* 133 Md. 286, 105 A. 271; *Huber v. Baltimore Trust Co.,* 158 Md. 697, 147 A. 599.

In making this disposition of this case we intimate no opinion that, with or without amendment of the bill, a different result may or may not be reached in the cases of Evans and Coleman from the result in the case of the other plaintiffs.

> *As to Evans and Coleman, appeal dismissed with costs; as to the other appellants, order affirmed with costs.*