## VELASCO *v.* PROTESTANT EPISCOPAL CHURCH IN THE STATE OF MARYLAND

[No. 29, October Term, 1952.]

*Decided November 11, 1952.*

*Application for modification of opinion, filed November 26, 1952, denied December 5, 1952.*

The cause was argued before MARKELL, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Julius A. Velasco* in proper person.

*Carlyle Barton,* with whom was *Alfred P. Ramsey* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court of Baltimore City filed March 17, 1952, reaffirming an order passed on September 14, 1951 and dismissing the bill of complaint with costs. The previous order had likewise dismissed the bill with costs, for reasons there stated.

The bill of complaint, filed November 16, 1950, recited that the complainant was a priest of the Episcopal Church, resident in the Diocese of Maryland since 1938; that on June 26, 1950 the Executive Council of the Diocese passed a resolution as to the complainant condemnatory in its nature; that such action was without lawful authority under the canons of the church; that he had demanded a hearing before an ecclesiastical court; that the effect of the resolution would be to prevent the complainant from continuing "on a canonical basis as a priest in charge of any Cure in the Diocese of Maryland or in any other Diocese." The bill prayed that the court command and enjoin the church authorities (a) to rescind the resolution, (b) to refrain from enforcing it, (c) to convene an ecclesiastical court to accord him a hearing, and (d) for other and further relief.

The appellee filed an answer, and with leave of court two amended answers, admitting the adoption of the resolution but denying its purport, effect or illegality, and denying that the complainant was entitled to any hearing before an ecclesiastical court, but alleging that it had offered to convene an impartial board of inquiry if he would agree to abide by its decision, which he declined to do. The second amended answer sought to justify the resolution by a recital of a long series of disagreements between the complainant and the church authorities.

The resolution in question was to the effect that the Executive Council affirmed its confidence in the Bishop, and "since it is obvious that through Mr. Velasco's own

actions, any harmonious and fruitful pastoral relationship is impossible * * * directs the Secretary to inform the Reverend Mr. Velasco that if and when the relationship between him the Vestries of Christ Church, Guilford, and St. Mark's Church, Highland, shall have terminated, the responsibility of the Bishop of Maryland and of the Diocese of Maryland for him shall have ceased."

On July 24, 1951 there was a hearing in open court but the matter was held *sub curia*. The transcript of testimony and exhibits are not in the record, the appellee says because the appellant declined to pay for it, the appellant says because the stenographer's notes and papers were lost or not available to him. On September 10, 1951 the Council passed another resolution (not in the record) rescinding the former one, and informed the chancellor of its action. On September 14, 1951 the chancellor filed a memorandum and order reading as follows:

"Since the hearing in the above case the resolution dated June 26, 1950, which resolution was the basis for the filing of the Bill of Complaint, has been repealed and rescinded, and therefore the granting of the first two prayers for relief in the Bill of Complaint would serve no practical purpose.

"The Court further finds from the pleadings, testimony and exhibits, that the plaintiff was not deprived of any rights in such a manner as would call for the intervention of a Court of Equity, the bill of complaint is therefore dismissed with costs." After further proceedings, consisting of a petition to modify the order, answer and motion *ne recipiatur*, the court passed the order appealed from.

The appellee has filed a motion to dismiss the appeal on the ground that the transcript does not include the testimony or exhibits. Of course, we cannot resolve disputed questions of fact without the evidence on which the chancellor may have acted, but appeal should not be dismissed if other questions are properly presented.

It is necessary, therefore, to determine what, if any, issues are raised by the appeal.

The appellant states in his brief that only two questions are presented "in the alternative form. 1. Should the complained of resolution be expunged from the records because it was not in accordance with the Canon Law of the Church? If not 2. Did Complainant have the right to require an ecclesiastical trial to answer the allegations in that resolution?" In short, the appellant concedes that the prayer in the bill for trial by an ecclesiastical court was subsidiary to, and not independent of, the prayer for rescission of the resolution. The appellant also states: "Respondent, through the court's intervention, repealed and rescinded the *ultra vires,* derogatory resolution which was the basis for the bill of complaint. Relief prayed was thereby granted. Trial by the Ecclesiastical Court on the allegations of the repealed resolution was no longer a question. The allegations no longer existed."

The appellant likewise appears to concede that after the resolution was rescinded there was no longer any occasion for the court to determine whether the resolution was illegal or unjustified in fact. If this be so, it would be equally futile for us to review the evidence presented, even if it were before us. The gravamen of the appellant's contention on this appeal seems to be that the court did, in fact, make findings, first in his favor and then against him, and the order in its final form does not conform to the facts. He states that the dismissal of the bill with costs was erroneous because "the court's action indicated appellant lost the case when the facts prove he did not." He states that the court expressed certain "informal views" (not filed in the court below) before the amended answer was filed, to the effect that unless the appellee, within a stated period, either rescinded the resolution or initiated ecclesiastical proceedings, the court would issue a formal decree enjoining the respondent to do so. Some color of support for the statement is shown by a recital in

the respondent's petition for leave to file a second amended answer (in the transcript) that "the views of the court based on the pleadings have since been informally indicated, but it is apparent that the facts have not been made sufficiently clear." If the matter were before us it might be difficult to justify the court's alleged views with the well-established rule that courts will not interefer with disciplinary action of church authorities. *Evans v. Shiloh Baptist Church*, 196 Md. 543, 77 A. 2d 160.

Of course, any views expressed by the court on the pleadings would be tentative only. If the court entertained such views at that time he was still at liberty to change his mind. That he did so is evident from the recital that the case was not one for equity intervention. The appellant contends, however, the subsequent rescission of the resolution was not a voluntary, much less a conciliatory, act, as contended by the appellee, but that "the relief prayed was obtained at the hands of the court. The resolution would not have been repealed without it." In his petition for modification of the order, the appellant prayed that the respondent be required to "pay the costs in these proceedings" and that the court state "without qualification that the court approves the settlement of the cause."

We think the appellant's contention misapprehends the legal effect of the rescission of the resolution and the court's order. Once the resolution was rescinded, the question of its legality or validity became moot, and injunctive relief could not be granted. This is made abundantly clear by the authorities. *Munder v. Purcell*, 188 Md. 115, 119, 52 A. 2d 923; *State v. Haas*, 188 Md. 63, 66, 51 A. 2d 647; *Alleghany Corp. v. Aldebaran Corp.*, 173 Md. 472, 477, 196 A. 418; *Baldwin v. Chesapeake & Potomac Telephone Co.*, 156 Md. 552, 557, 144 A. 703. The rule is based upon the principle that "the court should confine itself to the particular relief sought in the case before it, and refrain from deciding abstract, moot questions of law, which may remain after that

relief has ceased to be possible." *Public Service Commission v. Chesapeake & Potomac Telephone Co.,* 147 Md. 279, 281, 128 A. 39. It follows that the court could not properly approve or disapprove the "settlement". The order of dismissal would not indicate that either party had "lost the case", but merely that there was no longer a subsisting controversy as to anything except perhaps the costs. Nor would the court's function be enlarged because the case was rendered moot by the action of one of the parties, as was the case in nearly all of the cases cited, or because such action was not wholly voluntary but induced by fear of an adverse decision. The cases also make it clear that an appeal does not bring up for review the reasons assigned by a court for its final order. *Alleghany Corp. v. Aldebaran Corp., supra.* The order of dismissal must be sustained, even if the reasons assigned were erroneous, which we do not decide.

In the matter of costs, the appellant concedes that "costs as secondary", but maintains that costs should be paid by the losing side, and he did not lose. The basis of the court's decision is perfectly clear. The case was dismissed because it had become moot, but costs were imposed on the appellant because the court found he had improperly invoked the powers of the equity court. Whatever merit there may be in the contention that under some circumstances costs may properly be imposed on the party rendering the case moot, as was done by this court in *Alleghany Corp. v. Aldebaran Corp., supra,* and *Baldwin v. Chesapeake & Potomac Telephone Co., supra,* where the action was taken after the case reached the appellate court, the rule is well established that the award of costs in an equity court is discretionary, "and from its decision in the exercise of such power and discretion no appeal lies." *Getz v. Johnston,* 145 Md. 426, 433, 125 A. 689. See also *Miller's Equity Procedure,* § 278, and cases cited. Moreover, it has been held that an appeal will not lie where only costs are involved. *Wingert v. First National*

*Bank,* 223 U. S. 670, 32 S. Ct. 391, 56 L. Ed. 605. While this court has a wide discretion as to the award of costs on appeal, as distinguished from costs in the court below, section 71, Article 5, Code of 1951, we find no such merit in the appeal as to justify an award to the appellant. The only point raised is wholly without merit. Accordingly, we shall deny the motion to dismiss but affirm the order with costs.

*Order affirmed, with costs.*